## SUPREME COURT—IN BANCO.

### JANUARY TERM—1871.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

### JOHN Y. DAVIS *vs.* FRANCIS SPENCER.

AN UNRECORDED LEASE is good against a subsequent purchaser WITH NOTICE.

Acceptance of rent is WAIVER OF FORFEITURE.

NOTICE that FORFEITURE is claimed should be given to LESSEE with REASONABLE time to remove.

DEMAND FOR RENT must be made of the lessee at some time before sunset on the day it is payable.

Trespass for depasturing ten thousand head of sheep on the plaintiff's land in the Ahupuaa of Waikoloa, Island of

Hawaii, from September 25th, 1870, to the day of commencing this suit. Complaint filed November 29th, service acknowledged by the defendant's attorney, December 2d, *ad damnum* $500. Plea not guilty. Jury waived and the cause heard by the full Court. The following documentary evidence is presented by the plaintiff, viz. : Exhibit B2— Deed of Geo. Davis and wife conveying Waikoloa to John Y. Davis for $8,000, purporting to be written June 17th, 1868, acknowledged June 30th, and recorded July 4th, 1868.

Exhibit B (admitted by defendant), copy of *Pacific Commercial Advertiser* of October 1st, 1870, containing the following :

"*Notice.*—Notice is hereby given that Edward Asegut, of Waimea, South Kohala, Island of Hawaii, will act as our agent under power of attorney in regard to all matters, concerning the Ahupuaa of Waikoloa, South Kohala, Island of Hawaii.                          Geo. D. Hueu,
                                                                    John Y. Davis.
September 24th, 1870."

"*Notice.*—All persons are hereby forewarned not to take cattle, horses, mules, donkeys, sheep, goats and swine, which are not branded or marked according to law, on the Ahupuaa of Waikoloa, South Kohala, Island of Hawaii, or otherwise commit trespass on the said ahupuaa. Any person found trespassing after this notice on the above named land will be held responsible according to law.
                                            Geo. and John Y. Davis.
                                                  E. Asegut, Agent.
September 24th, 1870."

*Exhibit I.*—W. L. Green's letter to plaintiff of July 20th, 1868, saying : "I have consulted Mr. Austin and Mr. Montgomery about the correctness of the form in which we have the lease of Waikoloa from you and your father, and they inform me that all that is required to make everything quite in order now, is for you to reconvey the land back to your

father, reciting that the conveyance from your father to you was merely a form and not for a bona fide consideration. If you say so, I will send up a properly made out conveyance from you to your father, for you to sign, and when that is done, I will pay the other $200."

*Exhibit J.*—Draft of conveyance referred to in Exhibit I.

*Exhibit K.*—Plaintiff's answer to Green, dated July 30th, 1868, refusing to sign the conveyance as "my father does not assent to my doing so."

*Exhibit L.*—Demand on Green to "pay to Mr. Robert Lett, the sum of $600 : due on the leasing of Waikoloa, and as per bill rendered by Capt. W. Berrill," dated September 24th, 1870, and signed

"GEO. DAVIS and JOHN Y. DAVIS,
Per E. ASEGUT."

*Exhibit M.*—Notice signed as the preceding, dated September 24th, 1870, informing Green that "we have taken possession and entered into the land, Ahupuaa of Waikoloa, and call the lease made by us July 2d null and void, on account of default of payment on your side as promised in the said lease, with request to pay $500 amount due on lease."

*Exhibit O.*—Geo. Davis' letter to Asegut, dated September 19th, 1870, instructing him to demand of Green $500 rent for Waikoloa, and to put an end to the lease, for Green's failure to pay according to its provisions ; the writer saying he wishes to re-enter for that reason.

*Exhibit P.*—Plaintiff's demand of $500 of the defendant for this trespass, dated November 7th, 1870.

The defendant's documentary evidence is as follows, viz. :

*Exhibit A.*—Defendant's letter to Macfarlane, saying, "I have this day tendered the money to G. Davis, which he at first refused, but when he was led to understand that it was for rent to September 24th, and not in advance, he accepted it, and I enclose you his receipt. But if the lease reads that the rent shall be paid in advance, there should be

a tender of $300.00 without delay, as that money was due to September 24th, 1870."

*Exhibit A*, 2.—Geo. Davis' receipt enclosed in the preceding.

*Exhibit H.*—Plaintiff's agreement that "G. Davis has authority to make and conclude the lease made between him and W. L. Green, and that whatever may be done by him is right—that assent of mine refers to the land of Waikoloa. For the truth of my assent to the aforesaid, I hereby sign my name this 17th day of June, A. D. 1868, at &c.

JOHN Y. DAVIS."

Acknowledged July 18th, 1868 ; recorded June 11th, 1870.

*Exhibit C.*—In native, translated thus :

"*Lease.*—I the undersigned, do lease to W. L. Green the land of Waikaloa, etc., for 30 years. The consideration of my agreeing to this lease, is W. L. Green's giving me $500 every year from this day, for said 30 years, and his consenting that I keep, all those years, 300 cattle, 50 horses, 500 sheep ; but this is for Hueu and his family only.

I, W. L. Green, agree first to pay G. D. Hueu, $1,000 rent for two years.

G. DAVIS,<br>W. L. GREEN.

Kawaihae, March 24th, 1868.

D. PUNA, Witness."

This document is not recorded.

*Exhibit D.*—Receipt of July 2d, 1868, by George Davis Hueu and John Y. Davis of $1,000 from Green as rent of Waikoloa "for two years from March 24th, 1868, $300 remaining to complete the rent due for those two years."

*Exhibit E.*—Lease of Waikoloa from George Davis Hueu to W. L. Green for 20 years, from March 24th, 1868, for $600 a year, payable semi-annually in advance, and providing that in default of payment thereof, according to said terms, "George Davis, his heirs and assigns, may re-enter and take possession and put an end to the lease," reserving to the

lessor the right to pasture of 1,000 head of cattle, 100 horses, 1,000 sheep. Signed and acknowledged July 2d, 1868; recorded July 18th, 1868. Opposite the signatures of the parties, the plaintiff writes: "Approved by me, this 2d of July, A. D. 1868, John Y. Davis," and acknowledges the same with the parties.

*Exhibit F.*—Purports to be *An Indenture* between Green and the Waimea Grazing and Agricultural Company, reciting that George Davis had leased Waikoloa to Green for 20 years from March 24th, 1868, in trust for said company, who now request an assignment of the legal estate to them.

Signed by W. L. Green. Recorded September 5th, 1868.

*Exhibit G.*—Indenture whereby the said company, by its President, W. L. Green, and Secretary, Th. H. Davies, assign the lease of Waikoloa to the Defendant; recorded September 5th, 1868. Part of the consideration expressed, is the defendant agreeing to release to the Company certain privileges to pasture cattle on said land.

*Exhibit J.*—Charter of the said Company for ten years from July 28th, 1861.

*Exhibit N.*—In native, translated thus:

"Kawaihae, S. K., August 20th, 1870.

"W. L. Green, Esq.,—Dear Sir: I am troubled for money. Therefore, I order you to pay the rent on the Waikoloa lease, as per bill enclosed, into the hand of Capt. Berrill, who may receipt therefor.

"Respectfully, GEORGE DAVIS."

There was evidence that the plaintiff knew of the first lease to Green, and that he resided on the premises. The evidence concerning Green's assignment to the plaintiff, and concerning the agents of the Company to whom the lease was first assigned does not affect the law of the case, and therefore need not be stated. There was evidence to substantiate the writings above referred to, of the receipt of

John Y. Davis *v.* Francis Spencer.

$500 rent by George Davis, October 3th, 1870, and of tenders subsequently made to him and refused.

W. C. JONES, FOR PLAINTIFF.

I. The first lease is void and conveyed only an estate at will. The only act that gave it even that force was the acceptance of rent and the lessee's occupancy. Our Statute of Frauds, Section 1053, Civil Code, is but a modification of the English Statute of 29, Car. II. c. 3, and leases in writing not made pursuant to that Statute conveyed a mere estate at will. A tenant under a void lease is a tenant at will. Taylor's Land, and Ten. Sections 28 60. 1. Term, 83. 1. Term, 20.

There was no power of attorney to George Davis, no consideration in the lease to John Davis, and no satisfaction therein which is binding on him. Green testified that he merely asked John to sign the lease because he was in the habit of doing business for his father. The receipt was evidently signed by John for the same reason. There is no evidence that he received any money as a consideration. His receipt of rent under a void lease only created an estate at will or sufferance. 1. Term, 83.

II. The fee was in John when the lease was made, June 17th, 1868, and his deed was recorded before the lease. Possession follows ownership and gives a right to maintain trespass. Taylor's Land. and Ten. Section 86, 785, 11 Johns., 385, *Ib.*, 86 ; 184. 13 Me., 236. 7 N. H., 167. 8 Johns., 270. 1 Mass., 438.

Plaintiff's right of possession when the defendant entered continues until re-entry and recovery. 4 Cow., 329. 8, Wend., 558. 6 Hill, 328. The plaintiff always had *actual* possession. His notice by himself or agent was enough to terminate a tenancy at sufferance or will, and amounts to re-entry.

III. The statute of summary proceedings to recover possession was not intended for leases like this. The landlord

may re-enter if he can do so peaceably. 4 Allen, 118; 14 Mass., 490; 19 Pick., 82, 575. The acts of the plaintiff's agent were sufficient to enable him to maintain trespass against the defendant. 1 Pick., 43; 17 Pick., 264. The plaintiff could re-enter on breach of condition. 13 Wend., 535; 6 B & C., 518; Taylor's Land, and Ten., Section 492; Wirt *vs.* Phillips, 1 Haw., 16.

IV. The lease by its terms was forfeited for non-payment of rent, and the plaintiff was remitted to possession on declaring the forfeiture and re-entry, and the defendant became a trespasser from that time. The plaintiff's acts declaring his intention perfected the forfeiture. 1 Hil., Real Prop., 369; Co. Lit., 202*a*. No place to pay rent is specified, and it was the lessee's duty to pay on the land, or on that island. The lessors were not required to hunt up the lessee elsewhere. No further demand for $200 rent first due was needed, as payment was expressly refused, unless on certain conditions. The demands made were sufficient. The nature of a demand must be governed by the circumstances. A horizontal rule requiring an impossibility is absurd. A demand on this wild land, where the lessee did not reside, would only be made to the idle wind. There was a waiver of demand by consent. 43 N. H., 213.

V. A lessee cannot *discharge himself* of his obligations. Taylor's Land, and Ten., 317. There is no privity between the lessor and sub-lessee. Ib., 448. No notice was given to the lessor of the assignment, and he is not affected by it. Ib., Sections 381, 382, 524. The failure to give due notice of the assignment of the lease amounts to a waiver of demand.

VI. George Davis' receipt from the Grazing Company, October 3d, 1870, after the forfeiture declared and re-entry, does not bind the plaintiff, and cannot be construed as a waiver of forfeiture.

VII. Receipt of rent after forfeiture is no waiver. 12

Wend., 530 ; 3 Cow., 250 ; 4 B. & Ald., 401 ; Co.    Lit., 201, C. H ; Cowper 246, 482, 803 ; 11 Barb., 33 ; Taylor's Lan. and Ten., Section 492.    Waiver is a question of intent.    All the plaintiff's acts show he intended a forfeiture.  26 Barb., 41.

VIII.  There were three cases of forfeiture for non-payment. Equity would not relieve where there was such gross neglect. Eight hundred dollars was due September 24th, 1870, when a forfeiture was declared, and was not paid until after the forfeiture.    Three hundred dollars payable also on that day, was not tendered until after October 3d, 1870.

IX.  The testimony is clear on the damage.

F. H. HARRIS, FOR DEFENDANT.

1.  This action of trespass does not lie, as there was no exclusive possession.    2 Selwyn's Nisi Pr., 1323, n.

II.  The first lease is good and valid between the parties, and Green is not a trespasser under it.

III.  The plaintiff had notice of this lease, and of the possession under it.    The lease is therefore good against him.

IV.  It is clear that the deed from George Davis to John is not *bona fide*, as appears by the grantor's receipts of rent and his demands therefor, and appointment of Asegut as agent of the land, also by his letters referring to himelf as well as John, as still owner.    Such acts of ownership would not have been permitted or undertaken if the deed had been understood as a *bona fide* conveyance.

V.  It is claimed that the second lease was substituted for the first.    Green testified that it was intended to carry out in a more formal manner the first agreement.    If the second lease be void, it can not be substituted.    The second lease is good, because on the same day with taking the conveyance, the plaintiff signed a paper assenting to what had been or might thereafter be done, and received rent under the second lease.    This is sufficient memorandum in writing within our Statute of Frauds.

36

VI. The plaintiff's possession was only that which the lease gave him, under which the defendant holds.

VII. George Davis knew the lease was assigned, for he receipted for rent from the Waimea Grazing Co., (Ex. A. 2,) and Green had so told him.

VIII. This lease has not expired by its own terms, nor by acts of the parties. The notice to trespassers proves nothing. The plaintiff must follow the Statute for recovery of land by summary proceedings. Article XL., Civil Code.

IX. Forfeitures are not favored in law, 5 Bacon's Abr., 672. Courts of law and equity interfere in the tenant's behalf after the payment of rent, in order to save a forfeiture. Taylor's Land. and Ten., Section 495.

X. Neither a statute nor a common law demand was made. *Ib.*, Section 493.

XI. No forfeiture was claimed previous to September 24th, 1870, and none can be claimed since, as the lessee has at all times been urgent of tender, which is now in Court, and not accepted.

### OPINION OF THE COURT, BY HARTWELL, J.

We find the facts to be according to the documentary and oral evidence above stated, in which there is no conflict. The plaintiff took the deed of the land from his father with full knowledge of the prior lease then in force. This appears from the testimony of Green and from the evidence that he resided on the land, and jointly with Green and his father, occupied the premises for pasturage during the continuance of the lease, and for several years previous. Such knowledge is alone sufficient in equity to put a person on the inquiry as to the term of the occupancy. Cunningham *vs.* Potter, 99 Mass., 252. The plaintiff's written acknowledgment of his father's authority concerning the lease, made on the same day with the deed, is alone conclusive on the point of knowledge. Our statute of registry provides that leases for more

than one year shall be recorded, or be "void as against any subsequent purchaser in good faith and for a valuable consideration, not having actual notice." Civil Code, Section 1262. Nothing in the statutes invalidates an unrecorded lease as against a subsequent purchaser with notice. We have not re-enacted the third section of the English Statute of Frauds giving to deeds and leases not in writing, signed, &c., the effect of conveying only estates at will, but merely that "no action shall be brought and maintained," in such cases, "unless the promise, contract, or agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and be signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized." *Ib.*, Section 1053. The consideration need not be expressed in writing, but may be proved by any other legal evidence. *Ib.*, Section 1054. Hence a lease within these statute requirements is good against a purchaser with notice. This construction in equity, and finally in law, was judicially made in England and America, even before the clause excepting this class of purchasers was enacted. Dole *vs.* Thurlow, 12 Met., 164; Thompson *vs.* Blanchard, 3 N. Y., 337.

The rights of the assignees of a reversion to bring an action on the covenants or to claim a forfeiture on the breach of the covenants of a prior lease, and the rights of the lessor to re-enter after assigning the reversion, may not be clear under our statute. The common law did not allow a chose in action, as a right of entry, to be assigned. Hence when the Crown, in the time of Henry VIII, granted away the monasteries, the grantees found that they could sue in the name of the grantors for breach of covenants in the lease, but that neither they nor the grantors who had parted with the estate could re-enter and defeat the leases for breach of conditions. It was only by Statute 32, Henry VIII, c. 24, that grantees of reversions obtained the previous rights of

action held by the grantors. It is unnecessary now to pursue this question further. In Brewer *vs.* Chase, at the July Term, 1869, it was, however, settled that our statute remedy to recover possession of land is cumulative to the previous remedy by ejectment.

But the plaintiff claims that if the first lease was good as against himself, the second is not, and that the substitution of the second lease works a surrender of the first, and further, that his consent, indorsed on the second lease, being without consideration, had no other effect than to make the lessee his tenant at will or sufferance. This view is unsound for several reasons. A prior lease may be regarded as surrendered in law upon the mutual execution of a second, but this is only by reason of the intention of the parties themselves. It is absurd to suppose they intended to substitute a void for a valid lease. Schafflin *vs.* Carpenter, 15 Wend., 400 ; Flagg *vs.* Dow, 99 Mass., 98 ; Van Renssellaer *vs.* Penniman, 6 Wend., 569 ; Springstein *vs.* Schermerhorn, 12 John., 357. "Where parties enter into a contract which would have the effect of rescinding a previous one, but which can not operate according to their intentions, the new contract shall not operate to affect the previously existing rights." Noble *vs.* Ward, 2 Eng. Exch., (1867) 137. Moreover, the evidence shows a legal agreement between the plaintiff and lessee, on full consideration, that the latter should hold under the terms of the substituted lease. If we admit that no other consideration, such as the plaintiff's acknowledgment of his father's power to lease, can be shown for the deed than that which is expressed in the deed, or if shown that it could not affect the subsequent lease, it is a fair inference, and one that we can not avoid, that the plaintiff's assent to the second lease was given on consideration of the advantages he would receive from its terms, which would give him rights of residence and pasturage not secured by the first lease, and of the receipt, jointly with his father, of

$1,000, as rent under the second lease, given and accepted on the day it was executed. This was a legal contract, which binds the plaintiff to allow the lessee to hold under the second lease, but it gives him no rights as a lessor, and in no aspect of the case, does it make the lessee a tenant at will or sufferance.

Assuming that the grantor of the reversion could, by our law, take such steps as would defeat this lease for breach of condition to pay rent, so that the plaintiff would be entitled to treat the lessee and those holding under him as trespassers, let us inquire, (1,) whether there was a breach of condition, and (2,) whether legal steps were thereupon taken to work a forfeiture. Rent due and payable in advance September 24th, 1869, and again March 24th, 1870, was not then paid, but no demand therefor was made until the lessor's letter of August 20th, 1870, delivered to Green by Berrill previous to September 24th, then following, by his letter of September 19th, 1870, and by his agent Asegut's letter of September 24th, presented to Green by Lett, October 1st. The second letter of the plaintiff refers to the previous bill sent by Berrill, hence no demand was made for the advance rent of September 24th until October 1st, when demand was made by an agent of whose appointment the lessee had received no notice from the lessor personally. The demands of August 20th and September 19th were certainly not made as the law requires, which insists that the demand be made at some time before sunset on the day the rent is payable. Chapman *vs.* Harney, 100 Mass., 353.

Besides, these demands were satisfied by the lessor's unconditional acceptance, October 3, of the rent accrued to September 24, which must be held to be a waiver of forfeiture previously claimed. Stuyvesant *vs.* Davis, 9 Paige, 427. There would be difficulty in holding the demand of October 1st, by letter of Asegut of September 24th, as legal, in point of time, precision, or due notice of Asegut's

appointment; but if we admit that this demand, under all the other circumstances of the case, was sufficient, or that the lessée's previous refusal to pay on the ground that he had assigned the lease, dispensed with the necessity of further demand, there is no ground on which a notice to quit, or some acts from which such notice can clearly be inferred, can be dispensed with. The estate held under a lease for years with provisions for re-entry and forfeiture on breach of covenant to pay rent, is a conditional limitation, which is defeasible at the lessor's option, and is not an estate determinable *ipso facto*, on such breach. Fifty Associates *vs.* Howland, 11 Met. 99; Attorney General *vs.* Merrimack M'l Co., 14 Gray, 584. Such an estate is forfeited only on the landlord giving the tenant clear notice that he intends to claim the forfeiture, and at what time the tenant must quit, or become a trespasser. Brewer *vs.* Chase, *ubi supra;* Coke's Lit., 218; Sperry *vs.* Sperry, 8 N. H., 481; Willard *vs.* Henry, 2 N. H., 122; Stone *vs.* Ellis, 9 Cush., 99; Arnsby *vs.* Woodward, 6 B. & C., 522; Oakes *vs.* Munroe, 6 Cush., 287; Sandford *vs.* Harvey, 11 Cush., 95; Elliot *vs.* Stone, 12 Cush., 176; Currier *vs.* Blake, 2 Gray, 224; Steward *vs.* Harding, *Ib.*, 335; Leavitt *vs.* Leavitt, 47 N. H., 341; Mizner *vs.* Munroe, 10 Gray, 292; Beach *vs.* Nixon, 9 N. Y., 35; Jackson *vs.* Salmon, 4 Wend., 327; Jackson *vs.* Wilsey, 9 Johns,, 267. "It is clear that the notice must be such as the tenant may act upon with safety, that is, one which is in fact, and which the tenant has reason to believe, binding on the landlord." Jones *vs.* Phipps, 3 Q. B., (1868,) 573. Would the lessee safely have acted on any notice from Asegut? It must be observed also that there was a joint occupation by the parties, so that there could be no actual entry by the lessor short of evicting the lessee. "When the party who is to perform the condition, and the party for whom it is to be performed, are jointly in possession, it is said that the latter must make claim for a

John Y. Davis *v.* Francis Spencer.

breach by acts and words, or either such as will distinctly admonish the granter that possession will be retained for the breach and not waived." 1 Hillard's Real Pr., 367, and see Rollins *vs.* Riley, 44 N. H., 13. Was the notice against trespassers posted in public places near the residence of the lessee's agent or assignee, and published in the newspaper, sufficient to notify the lessee and those holding under him that a forfeiture was claimed? Clearly not. This general warning against trespass was served on no person; it was such a notice as either occupant might give during the tenancy without intending the other. Notice that a forfeiture is claimed should be brought home to the lessee, and we think it should also allow him a reasonable time to remove his property before being treated as a trespasser. See Pratt *vs.* Farrar, 10 Allen, 520, and besides previous citations, 1 Am. Law Rev., 271; 1 Washburn's Real Pr. (edit. 1868,) pp. 417, 421, 425; 1 Parsons' Contr., pp. 503, 506, 514.

It is therefore ordered, adjudged, and considered by the Court, that the defendant to take judgment for costs and go without day.