B. SPRINGSTEIN *against* H. B. SCHERMERHORN.

THIS was an action of trespass *quare clausum fregit*, and for cutting wood, &c.

In 1707, *Killian Van Rensselaer*, proprietor of the manor of *Rensselaerwick*, gave a lease in fee, to *Jacob Schermerhorn*, of a tract of woodland, now situate in the town of *Schodack*, in *Rensselaer* county, containing, by estimation, four hundred acres of land, more or less.; subject to the yearly rent of one tenth part of the produce of the demised premises. The lease contained the following clause : " Together with reasonable *estovers* out of the woods of the said manor, for building, fencing; and fuel, on the said woodland," &c. ; and also the following reservation : " Reserving the privilege to the neighbouring tenants of the said manor, of free pasturage for commonable cattle, within the bounds of the said tract, if not in fence ; to gather and take away stone ; and to cut and carry away wood, for fencing, building, and fuel, for their uses on the said manor only."

In 1763, *Jacob Schermerhorn* conveyed part of the demised premises, by metes and bounds, to his son, *Ryers Schermerhorn ;* and the deed contained the following clause : " As also free liberty and privilege for the said *Ryers Schermerhorn*, his heirs and assigns, to cut and carry away wood for fuel and fencing, for the use of the conveyed premises only, out of any part of the woodland of the said *Jacob Schermerhorn*, and excepting and reserving to the lord of the manor, the tenth of the produce of all grain, the growth of the same premises."

*Jacob Schermerhorn*, by his will, dated the 16th of *July*, 1766, devised all his land, lying at *Schodack*, on the main shore, to his sons, *Johannes* and *Hendrick*, their heirs and assigns, for ever, each the equal half thereof.

On the death of the testator, during the revolutionary war, the devisees entered on the premises so devised, which were part of the land above leased; and, soon after, divided the same between them.

A tract of 400 acres of woodland, was leased by the proprietor of the manor of *Rensselaer*, in 1707, to A., *in fee*, reserving an annual rent, and granting reasonable *estovers* out of the woods of the manor, &c. In 1763, A. granted to his son, B., part of the premises, with common of *estovers*, out of any part of the woodland of A ; and afterwards devised to his sons, C. & D., the residue of the said tract, who, on the death of the devisor, entered and made partition. In 1791, an agreement was made between B.,C.,& D , and other tenants of the manor, with the then proprietor, by which the tenants agreed to surrender, or release, their former leases, and take new leases of the proprietor at a certain rent, and new leases were accordingly accepted, for their respective lands, by B , C.. & D. It was held, that as there was no reversion in the proprietor of the manor, the acceptance of new leases did not operate as a *surrender* of the former estate, but that the lessees, having accepted new leases from the proprietor, in pursuance of the agreement, a release of the old, was to be presumed ; and further, that B. was thereby *estopped* from all claim under the lease to him ; and that for these reasons, the right granted to B., to take *estovers* from the other lands of A., was gone.

NEW-YORK,
Oct. 1815.

SPRINGSTEIN
v.
SCHERMERHORN.

By an agreement, made the 24th of *November*, 1791, between *Ryers Schermerhorn*, *John Schermerhorn*, *Jacob Schermerhorn*, *Hendrick Schermerhorn*, and several others, of *Schodack*, of the one part, and *Stephen Van Rensselaer*, proprietor of the said manor, by *Thomas L. Whitbeck*, his attorney, of the other part; reciting, that the parties of the first part, being tenants in common, of certain lands in *Schodack*, by virtue of four several leases from *Killian Van Rensselaer*, the proprietor of the manor of *Rensselaer*, specifying their dates, and desirous to hold the lands, each, for himself, in severalty, and subject to a certain annual stipulated rent, they agreed to release, or surrender up their former leases, to the party of the second part, and take new leases, agreeable to a survey to be made, subject to the annual rent of ten bushels of wheat for every hundred acres; and the party of the second part agreed to execute new leases accordingly, reserving only ten bushels of wheat and two fat hens, yearly, for each hundred acres, free from any quarter sale; with free privilege for cutting wood in such lands, in the said manor, as shall, from time to time, remain waste, and not particularly appropriated or demised.

In pursuance of this agreement, *Hendrick Schermerhorn*, on the 23d of *June*, 1792, accepted a new lease from *S. Van Rensselaer*, the proprietor of the manor, for divers parcels of land in the said manor, including the premises devised to him, as aforesaid, and described with metes and bounds, in which was the following clause : " Together with reasonable estovers for building, fencing, and fuel, on said pieces or parcels of land, out of such parts of said manor, as shall, from time to time, remain waste, and not particularly appropriated or demised by the said *Stephen Van Rensselaer*, his heirs, and assigns." *Johannes Schermerhorn* and *Ryers Schermerhorn*, accepted similar leases for their respective lands, in *January*, 1794.

*Hendrick Schermerhorn* died intestate, in 1796, and in 1798 his heirs sold, and conveyed to the plaintiff, 147 acres of the land and premises so leased to *Hendrick Schermerhorn*. The plaintiff had married a daughter of *Johannes Schermerhorn*, who inherited, from her father, twenty acres of the land so leased to *Johannes*. The plaintiff entered into the possession of the premises so conveyed, and devised, to him, and enclosed the same with a fence; and the defendant broke the fence of the plaintiff, and cut and carried away wood from off the said land,

*Ryers Schermerhorn,* a few years ago, died intestate, and his lands descended to his son, *H. R. Schermerhorn,* the defendant, who claimed the right to cut and carry away wood out of the close of the plaintiff, by virtue of the conveyance from *Jacob Schermerhorn* to *Ryers Schermerhorn,* in 1763.

Two witnesses, for the defendant, testified, that the plaintiff had complained, that the right of the *Schermerhorns* to cut wood on his land, was ten times more burdensome to him than the rent payable to the lessor. That the witnesses lived near the premises; and that since 1792, and long before, the defendant and his father exercised the right claimed by them, to cut wood on the said premises, with the knowledge of the plaintiff, and they never heard the right questioned, until a short time before the commencement of the present suit. Two witnesses, for the plaintiff, testified, that they lived near the premises, and that the privilege claimed by the defendant and his grantor, to cut wood on the premises, had been a subject of controversy between them and the plaintiff, and those under whom he derived his title, for many years, and that actions of trespass had been brought before justices of the peace; and that the plaintiff had uniformly and openly denied and resisted the privilege claimed by the defendant.

It was agreed by the case, that if the court should be of opinion that the plaintiff was entitled to recovery, an interlocutory judgment should be entered, and a writ of inquiry of damages issue thereon; otherwise, a judgment of nonsuit was to be entered.

*A. Van Vechten,* for the plaintiff, contended, that the defendant had no right of common by descent, from his father, *Ryers Schermerhorn.* The right which *Ryers* had, was liberty to him, and his heirs, and assigns, to cut and carry away wood, for fuel and fencing, for the use of the part of the demised premises conveyed to him by *Jacob Schermerhorn.* The right of common of *estovers,* in this case, was not partable in its nature;* *Co Litt.* 147. *b.* and by the conveyance of parcel of the farm, it became ex- 164. *b.* 4 *Vin.* tinct. There can be no apportionment in such a case. Sup- *Appor.* (A.) *pl.* pose *Jacob Schermerhorn* had, by separate conveyances, par- *pl.* 11. *Finch's Law,* 158. celled out his 400 acres to forty different persons, with the same clause as to common of *estovers,* could all the different tenants exercise rights of common, originally granted to one only?

Again, all the rights or privileges granted to *Jacob Schermer-horn*, and which passed to his sons, have been *surrendered*; and if the defendant justifies, it must be under a new title, not under the original grant to his ancestors. Here is not only a surrender by express stipulation; but a surrender by operation of law. The son accepted a new lease for the premises derived from his father.* The acceptance of the new lease, inconsistent with a former, operates as a surrender of such former deed. It may be objected, perhaps, that there is no certain evidence of an actual surrender of the original lease. But the agreement for the new lease was express, that the old one was to be surrendered. Such surrender was a condition precedent to granting the new lease. The manner of obtaining the new leases, connected with the agreement, shows, conclusively, that the condition on which the new leases were to be given, was fulfilled. But it will be said, that the defendant, not being a party, is not estopped. But where a surrender is necessary to give effect to a new lease, the party who accepts the new deed is incapacitated to deny the surrender of the old deed.

*Shep. Touch. 301, 302—4. Burr. 1980. Rob. on Frauds, 253. 261.*

Again, it may, perhaps, be said, that the new lease is not for the whole of the premises contained in the old lease; and so cannot operate as a surrender of the whole. Granting this, still the surrender is good *pro tanto;* if so, it must operate as a complete surrender of the right of common; for to what part can the right of common attach? By the surrender of a part, the common is extinguished and gone.†

† *Bac. Ab. Common. (E.) 5 Vin. Ab. 16. Common. (E.a.) Cro. Eliz. 594.*

*H. Bleecker*, contra. *Henry* and *Johannes S.* took the land, devised to them by *Jacob*, subject to the right of common before granted by *Jacob* to *Ryers*. The defendant, being the heir of *Ryers*, the land descended to him, with the right of common of *estovers*. A grant of the land carries with it the right of common, which is attached to the land. Then what has been done to release this right of common? The agreement made with the lord of the manor, was merely for the purpose of changing the nature of the rent; to make it certain, to avoid quarter sales, and that each might hold in severalty. It was at the instance, and for the benefit, of the tenants, who were parties to that agreement. The lord of the manor had no concern with the rights of common. As no release of these rights to the

lord of the manor, are produced, or shown, the court will not presume that they have been released.

Then what is the effect of the new lease to *Ryers Schermerhorn?* It was only for a part of the lands derived from his father. The premises originally granted comprised two islands in the *Hudson,* which are not included in the new lease.; if he surrendered a part, the right of common became apportioned, and he retained the right of common as to the part not surrendered. If so, the plaintiff must fail in this action, for the quantity or extent of the defendant's right is not to be settled in this case. If *Ryers* retained any part of the land to which the right of common remained attached, the law of apportionment will apply to that part. Common of *estovers* may be apportioned as well as any other common.

Again, the parol evidence shows that the defendant has exercised this right of common for more than 20 years, under the eye of the plaintiff, and an acknowledgment of this right on his part. Common may be gained by long sufferance, as well as lost by long neglect.[*] The law, as in the case of ancient lights, presumes a grant, from the lapse of time.

[*] 5 *Vin. Ab.* 15. *Common.* (E. 4.)

PLATT, J., delivered the opinion of the court. The only question which it is deemed necessary to consider, is, whether the agreement with *Stephen Van Rensselaer,* and the acceptance of new leases by *Ryers Schermerhorn* and his two brothers, in pursuance of that agreement, have operated to devest him and his heirs of their original privilege of cutting wood in those parts of the 400 acre tract which are included in the new leases to *Johannes* and *Hendrick Schermerhorn?*

It is contended, by the plaintiff's counsel, that the acceptance of the new leases was, virtually, a surrender, in law, of the original lease, and of all rights which the new lessees had acquired under it.

According to Sir *Edward Coke,* " a surrender is a yielding up of an estate, for life or years, to him that hath the immediate estate in reversion or remainder, wherein the estate for life or years may drown, by mutual agreement." (*Co. Lit.* 337. *b.*)

Here, it must be observed, that the original lease to *Jacob Schermerhorn* was a grant *in fee,* subject to rent. There was, therefore, no immediate estate of reversion or remainder in the lessor or his heirs, in which a lesser estate could merge or

NEW-YORK,
Oct. 1815.

SPRINGSTEIN
v.
SCHERMERHORN;

drown; so that the doctrine of surrender, express or implied, has, strictly, no application to this case.

I think, however, that *law*, as well as *equity*, forbids the claim set up by the defendant.

1st. On the ground that a release by *Ryers*, *Johannes*, and *Hendrick Schermerhorn*, to *Stephen Van Rensselaer*, is, legally, to be presumed; because the agreement to release, with the reasons and motives given for it; the acceptance of new leases for the premises in question, and exacting a general covenant of warranty against all claims, are acts utterly inconsistent with the existence of the old lease, so far as regards the lands included in the new leases.

The agreement bound *Ryers Schermerhorn* and his brothers to release all claims to the 400 acre tract; and, upon condition of their so doing, *Stephen Van Rensselaer* covenanted to give new leases, in lieu of the old lease. Fair dealing, and the obligation of their contract, required them to extinguish all previous interest and claims, before they accepted new leases for the same land, with general warranty of title. Besides, the case agreed on expressly states, that the lessees accepted the new leases " *in pursuance of the said agreement ;*" which implies that, upon executing the new leases, all the previous conditions were complied with on the part of the lessees; and, if so, the release must have been duly executed.

2dly. On the ground of *estoppel*, I think the defendant is barred of all claim under the original lease.

The *locus in quo* was not, indeed, a part of the lands for which *Ryers Schermerhorn* accepted a new lease to himself; but the transactions embraced in the agreement with *Stephen Van Rensselaer*, were the subject of one entire contract, wherein the covenants and stipulations of each of the parties were, necessarily, dependent upon, and connected in interest with, the acts to be done by every other party. I consider, therefore, that, in executing that agreement, *Ryers Schermerhorn* contracted not only for a new lease to himself, for his particular part, but, also, that new leases should be given, in complete severalty, for the other parts, to his brothers, *Johannes* and *Hendrick*. At the time of making that agreement, *Ryers* had a privilege (appurtenant to his other land) of cutting wood for fuel and fencing, on any part of the 400 acre tract; and, by that agreement, he consented and appointed that the landlord should

execute new leases to *Johannes* and *Hendrick*, for particular parts of that tract, without reservation of his privilege. Those new leases have, accordingly, been executed, and include the *locus in quo.*

Estoppel may be by matter *in pais* as well as by matter of record; as, by accepting an estate, making partition, &c. (*Co. Lit.* 352. a.)

So, if a man take a lease of his own land, he is estopped from setting up his original title. (*Co. Lit.* 47. b.) And, whether *Ryers* took a new lease to himself, or directed, in writing, under seal, that his landlord should give new leases to his brothers, for the premises in question, he is equally estopped from asserting any claim in opposition to the new leases.

From the view which we have taken, the parol evidence in the case is irrelevant; and the plaintiff is entitled to judgment.

Judgment for the plaintiff.