HARVEY R. MILLARD, Respondent, *v.* JOHN McMULLIN et al., Appellants.

Though a tenant in common enter without claiming adversely to his co-tenant, his possession may afterward become adverse by notorious acts and claim of title to the whole.

J. & D. were tenants in common of certain premises held by them under

a lease in fee, subject to payment of rent reserved, the landlord having a right of forfeiture and re-entry for non-payment of rent. D., by parol, sold his interest to J., receiving in payment the promissory notes of the latter, who thereupon took possession, claiming to own the whole. *Held* (EARL, J., dissenting), that this possession was adverse, and, continued for twenty years, ripened into a title; and that a judgment against J., thereafter docketed, attached as a lien upon the premises.

Prior to the docketing of the judgment, a contract was made between the landlord and J., in the ordinary form of an executory contract for the sale of lands, by which the former agreed to sell and the latter to purchase the premises at a price specified, to be paid in installments, and, upon payment, a deed to be executed; in case of default in payment, it was provided that the vendor might re-enter, and that the purchaser should become a tenant at sufferance. The consideration expressed was not the value of the premises, but was made up of rent in arrear and the estimated value of the future rent reserved; the contract was not made with intent to disturb the title under the lease, which was not surrendered or agreed to be surrendered. *Held* (EARL, J., dissenting), that such contract did not affect the prior relations between the parties, or change the legal title of J. to an equitable one; that there was no surrender of the lease in law, as such a surrender could only be made to a reversioner or remainder-man, neither of which positions was held by the landlord; nor was there a merger of the prior estate, as a greater could not be merged into a lesser estate; nor did the doctrine of estoppel apply to prevent J. from claiming under the lease.

*Springstein* v. *Schermerhorn* (12 J. R., 357) distinguished.

J. assigned the contract to B., who performed it and took a conveyance. *Held* (EARL, J., dissenting), that B. acquired a lien upon the premises for the amount paid, which was prior to the lien of the judgment; but that he did not acquire the title of J. under the perpetual lease, and that the lien of the judgment attached thereto.

J., subsequent to his purchase, executed a mortgage upon the premises for the purchase-money, which D. assigned to B. The premises were sold upon execution issued upon the judgment. Plaintiff purchased and received the sheriff's deed. In an action to recover the premises plaintiff obtained judgment. The amount, however, paid by B. for the purchase of the contract and the amount of the mortgage were declared liens prior to the judgment under which the premises were sold, from which were deducted the amount B. had realized from the premises, which was received prior to the sheriff's deed. *Held*, that as plaintiff was not the owner of the land until he received the deed, he was not entitled to the rents and profits prior to that time, and that, as by the judgment, he recovered the land, and the deduction, therefore, inured to his benefit, the judgment was, in this respect, erroneous.

(Argued January 24, 1877; decided February 6, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff, entered upon a decision of the court at Special Term. (Reported below, 5 Hun, 572.)

This action was brought to recover certain premises sold on execution against defendant John McMullin, and to have a deed thereof, held by defendant Bell, declared a lien only.

The facts, as found by the court, are substantially as follows :

Morgan Lewis, being the owner of the land in question, on the 1st day of February, 1830, did, by an instrument in writing under his hand and seal, duly grant, demise and to farm let the said premises to Angus McMullin, subject to and reserving an annual rent of thirty-six bushels of wheat, also reserving the right to re-enter and take possession of the said premises, in case the said rent was not paid within thirty days after the time agreed upon. The said Angus entered upon, and took possession of, the premises under the said instrument, and occupied the same up to the year 1843, when he died, leaving John and Daniel, his two sons, to whom he devised the premises. They continued in possession as tenants in common until 1847. In April, 1847, Daniel, by parol, agreed to sell his interest in said premises to John for the sum of $600, and at that time delivered the possession of the entire premises to him; John executed and delivered to Daniel a promissory note for the purchase-money, which was renewed from time to time, and the debt was so continued until the 19th day of February, 1872, at which time it was embraced in a bond secured by a mortgage on said premises, given by the said John to said Daniel, to the amount of $641.02. The said John took possession of the entire farm, and occupied and claimed to own the same adversely, and continued to do so until May 1, 1872, On the 1st of November, 1861, the rent in arrears under the said lease had been allowed to accumulate to the amount of $599.53. On that day, Robert J. Livingston had succeeded to the landlord's rights under the said lease, and owned the said landlord's interest; and on that day he entered into a

contract in writing with the said John McMullin, under their hands and seals, whereby the said Livingston agreed to sell to the said McMullin the premises for the sum of $1,080, which the latter agreed to pay with interest from the 1st day of February, 1861, in six equal annual payments, on the first day of December in each year thereafter. It was provided in said agreement, that in case of failure on the part of McMullin to perform his part thereof, Livingston should have the right to re-enter, and McMullin should forfeit all legal and equitable claim, and should be deemed a tenant at sufferance, and the said Livingston should have the right to take immediate possession of said premises. Upon a fulfillment of the agreement by McMullin, Livingston agreed to convey by a good and sufficient deed, with the usual covenants of warranty, except as against any person holding or claiming in virtue of any lease from Morgan Lewis, or his representatives. The consideration named in said contract was made up of the agreed value of the rent reserved and rights of re-entry, $541.50, and the rent in arrear on the lease, $599.50, less $61.03, thrown off by the landlord. The estimated value of the entire farm, with the landlord's rights extinguished, was then about $3,000.

On the 7th day of December, 1867, the plaintiff and George M. Frisbee duly obtained a judgment against the said John McMullin for the sum of $276.90, which was on that day duly filed and docketed. An execution was duly issued on the said judgment, by virtue of which the sheriff levied upon, advertised and sold the said premises on the 14th day of June, 1872, as the property of the said John McMullin, and the same were struck off to plaintiff; the same not having been redeemed, the sheriff on the 24th day of September, 1873, duly executed and delivered to said Millard a sheriff's deed of said premises. On the 23d day of April, 1872, the said bond and mortgage executed by John to Daniel, and said contract between John and Livingston, were duly assigned to defendant Bell, who received the same with full knowledge of the judgment, but in good faith

and without any fraudulent intent. On the 1st day of May, 1872, the said Bell formally turned the said John and his wife, the defendant Juliette A. McMullin, out of possession of said premises, and formally took possession thereof, and leased the premises to the said Juliette for the term of one year from the 1st day of April, 1872. The said Bell did not demand the payment of the rent on said lease, and thereby attempt to terminate said lease, nor did he attempt to re-enter by reason of the non-fulfillment of the covenants of said lease.

On the 6th day of May, 1872, Bell paid Livingston the amount due and unpaid upon said contract, and took a deed of conveyance from Livingston and wife with covenants of warranty against all claims, except as against any person holding or claiming in virtue of any lease from Morgan Lewis or his representatives, as provided in said. contract. On the 15th day of May, 1873, the said Bell contracted to sell and convey said premises to the said Juliette. On the 21st of October, 1873, the said John duly assigned to Bell his equitable cause of action against said Daniel to compel him to convey by deed, in writing, his interest in said premises, in pursuance of said parol agreement to sell. The said Juliette and John McMullin continue in possession of the premises, and claim to own and hold the same under said contract from Bell. As conclusions of law the court found that on the 1st day of November, 1861, before the making of the contract between Livingston and John McMullin, the said Livingston was the owner of the rent reserved in said lease, with the right of re-entry in case of failure to pay said rent and of the rent that had already accrued and was in arrear. That John McMullin was the owner of the premises in fee, subject to the payment of such rent reserved and to the performance of the lawful conditions contained therein, with the landlord's right of re-entry, and subject to the rent then in arrear; also, subject to the equity in regard to an undivided half thereof arising out of the said parol agreement to sell between him and his brother Daniel. That said parties

contracted with reference to the landlord's interest only, and there was no merger of one title or interest into the other by virtue of this contract. That McMullin did not release or extinguish his title or interest in said premises under the said lease *in presenti*. That this contract having been paid up and performed by Bell, and a deed of said premises given to him pursuant to the provisions thereof, that portion of the contract which stipulated that in case of a failure to perform the covenants therein the said Livingston should have a right to re-enter and take immediate possession of said premises, and McMullin should forfeit all claim upon said Livingston, and be deemed a tenant at sufferance of Livingston, never became effectual or operative and binding upon the parties. That on the 7th of December, 1867, when plaintiff and Frisbee, perfected their said judgment against John McMullin, he was the owner in fee of the said premises, subject to said landlord's rights and equities under said contract, and subject to the equities of said Daniel, and had such title in said premises, that the said judgment became and was a lien thereon, subject to all the prior rights and equities that McMullin's title was subject to. That at the time of the sheriff's sale, the judgment still continued a valid and subsisting lien on said premises, and that by virtue of such sale and deed which was subsequently received from the sheriff, plaintiff acquired and became the owner of the title of John McMullin as tenant under the said lease, subject to the equities prior thereto. That John having held and actually occupied Daniel's undivided half of said premises, and under said parol sale claiming to own them adversely for over twenty years, had become, on the 1st day of May, 1872, as against Daniel, the absolute owner of Daniel's interest, subject to the equitable lien of Daniel for the purchase-price thereof, and after what has transpired in regard thereto, Daniel will be estopped from making any claim thereto. That the plaintiff is the owner of the said premises, and entitled to the possession thereof, subject to the landlord's interest and the equitable lien of Daniel, which Bell now owns; from which the court deducted

$322.50, as the amount realized by Bell from the premises prior to October 1, 1873.

*C. H. Bell* for the appellants. The court erred in holding that John McMullin held and obtained his brother Daniel's title to the farm by adverse possession. (Adams on Ejectment, 47, 48; *Butler* v. *Phelps*, 17 Wend., 642; *Frasier* v. *McPherson*, 3 Eq. R., 468.) By the contract of purchase with Livingston the lease became void and the title became vested in the grantor. (*Springsteen* v. *Schermerhorn*, 12 J. R., 357; *Sparrow* v. *Kingman*, 1 N. Y., 251; *Bedford* v. *Terhune*, 30 id., 462; *Payn* v. *Beale*, 4 Hill, 411; 3 Greenl. Cruise on R. P. [m. p.], 468, § 5; *Van Rensselaer* v. *Kearney*, 11 How. [U. S.], 297.)

*Wm. Gleason* for the respondent. In the contract of 1861 there was no intention on the part of John to merge or extinguish the freehold then owned by him. (*Day* v. *Mooney*, 6 N. Y. S. C., 382; *Clipt* v. *White*, 12 N. Y., 519; 20 id., 41; 7 Paige, 509.) Angus McMullin acquired by the conveyance from Livingston a freehold estate to himself and his heirs forever. (*DePuyster* v. *Michael*, 6 N. Y., 467.) To constitute a merger the Livingston title to the rents of the land and the freehold of McMullin in the land itself must unite in one person. (3 Keyes, 174, 179; 42 N. Y., 338.)

Church, Ch. J. The general question upon the merits is whether John McMullin had any title to the premises in controversy on the 7th day of December, 1867, upon which the judgment docketed on that day against him in favor of the plaintiff and one Frisbie was a lien. The plaintiff claims title by virtue of a sale upon an execution issued upon that judgment, and a sheriff's deed given in pursuance thereof. A brief reference to the leading facts is pertinent to a proper understanding of the points involved. In 1843, John McMullin and his brother, Daniel, succeeded by devise to the title of their father, Angus McMullin, who held a durable

lease (as it is called), being in the form of manorial leases from Morgan Lewis, granting the premises in perpetuity, reserving a fixed rent and containing various provisions and conditions not necessary to refer to. This title was an estate in fee simple, subject to the payment of the rent reserved, and the performance of the other conditions, the landlord having the right of forfeiture and re-entry for the non-payment of rent and the non-performance of the other covenants. (6 N. Y., 467.) If this title continued, it is conceded that the judgment would attach as a lien. John and Daniel held and occupied the premises under this title until April, 1847, when Daniel sold his undivided half interest by parol to John, the latter taking possession of, and claiming to own, the whole. The consideration for this sale and purchase was secured by the promissory note of John. Daniel never executed a deed or other writing, and a question is made whether John acquired a title in fee under this purchase.

Though a tenant in common enter without claiming adversely to his co-tenant, yet his possession may afterwards become adverse by notorious acts and claim of title. (5 Cowen, 483.) The act of purchase and assumption of exclusive ownership, under the circumstances constituted, I think, an adverse possession. There can be no question, but a court of equity would have decreed a specific performance and compelled Daniel to convey the premises, subject, perhaps, to a lien for the purchase-money. Whatever the rights of Daniel may have been to demand an equitable lien for the purchase-money, it is undisputed that the purchase-money was adjusted to the satisfaction of Daniel, and hence the claim of John was absolute and unqualified to the ownership of the whole, and for the purpose of an adverse possession the purchase-money should be regarded as paid. (14 Wend., 227; 8 Cow., 597.) This possession, therefore, ripened into a title in twenty years, which period had elapsed before the docketing of the judgment. A question of more difficulty arises out of the intervening contract made between Mr. Livingston (who succeeded to the rights of Morgan Lewis) and John McMullin. It is

dated November 1, 1861, and is in the ordinary form of a contract of sale and purchase of land between owner and purchaser, by which Livingston agreed to sell, and McMullin agreed to purchase, the premises for $1,080, payable in six annual installments, and it is provided that if the payments were made the former would convey to the latter the premises by deed, and if not performed, it was provided that the grantor might re-enter, and that the grantee should, in that case, be a tenant at sufferance. It is claimed that this contract constituted a substituted relation between the parties to that existing under the perpetual lease, and hence, that from that time the title of John McMullin dropped from a legal to an equitable title, and that the legal title became vested in Livingston as trustee. The transaction is found by the learned judge, who tried the case, to have been quite different in intention and fact. The findings upon this branch of the case are that the value of the premises at the time was $3,000, the consideration, $1,080, leaving as the value of the interest of McMullin about $1,900; that the consideration was made up of the amount of the rent in arrear, less sixty-one dollars and three cents agreed to be deducted, and the value of the future rent reserved estimated at three dollars an acre; that the consideration specified was the true value of the landlord's interest for rent due and reserved, and that the intention of the parties was only to sell and purchase that interest without changing or disturbing the title held by John McMullin under the lease. There was no negotiation for any change or relinquishment of title. There was no agreement to surrender the lease, and it was not in fact surrendered. A surrender can only be made to a reversioner or remainder-man, and there was, therefore, no surrender in law. Nor was there a merger as a greater cannot be merged into a lesser estate. Nor do I think that the doctrine of estoppel applies to prevent John McMullin from holding the title which he had under the lease. Estoppels are mutual, and if he was estopped the landlord was.

In the case of *Springstein* v. *Schermerhorn* (12 Johns., 357)

there was an agreement to surrender the old lease and substitute a new one with different provisions. The new lease was executed, and after several years the court held that a surrender of the old lease would be presumed and the landlord estopped from claiming it. Here there was no agreement to surrender, and none in fact. In equity contracts will be construed as the parties intended. A deed will be held a mortgage if the parties so intended, and this may be shown by parol. The landlord held the obligation of the tenant to pay rent due and to become due. He liquidated the future rents at a gross sum and took this contract as security for that sum and the amount of the rent due. If the contract had not been performed he could have resorted to the remedies provided in the lease. He held the lease, and there was nothing inconsistent in the contract with his right to fall back upon those covenants. It may be that these remedies were suspended during the running of the contract. The contract was in fact performed by the defendant Bell, the assignee of John McMullin, and at his request, so that it is not indispensable to pass upon rights of the parties as if it had been unperformed. The point is, what right in the land Bell acquired by performing the contract and taking a conveyance from Livingston. It was held below that he acquired a lien on the premises for the amount thus paid, but did not acquire the title of John McMullin held under the perpetual lease. He purchased the rights of Livingston under the contract, which may be regarded in the nature of a security for the amount specified. Livingston had no other interest by the contract to sell. As between Bell and John McMullin the former could have enforced this contract and nothing more, but McMullin's title under the lease remained, and as he never conveyed, or in any manner transferred that title, it follows that the lien of the judgment attached. , I concur upon this point with the court below, but with some hesitation, as the transactions create some obscurity. It is of some pertinence that all the parties treated the title as in John McMullin. He executed, in 1872, a mortgage to Daniel for the purchase-

money of the latter's interest in the premises, which mortgage was purchased by the defendant Bell, and for the amount of which he is protected by the judgment in this action. The result adopts the real instead of the formal acts of the parties, and disregards technicalities in furtherance of substantial justice. The defendant Bell is protected by having the amount paid to Livingston declared a lien prior to the judgment, and also the mortgage given by John to Daniel for the purchase-money. There is, however, deducted from the amount of these claims $322.50, being the amount which Bell realized from the land prior to October 1, 1873. The sheriff's deed was not given until September 24, 1873. The plaintiff, by the judgment, recovers the land, and this deduction from Bell's claim inures, therefore, to his benefit. I do not see what right the plaintiff has to this sum. He was not the owner of the land until he received the sheriff's deed, and this sum was realized before that time. According to the theory of the judgment John McMullin was, during that period, the owner and entitled to the rents and profits. At all events the plaintiff was not.

The judgment must, therefore, be modified by adding the $322.50 which was deducted from Bell's claims, and as modified, affirmed without costs to either party as against the other in this court.

All concur, except EARL, J., dissenting.

Judgment accordingly.