"We reach this conclusion with regret, for, as has been well said, the character and standing of the plaintiff are such as to relieve him from any suspicion of presenting an unfounded claim. But public policy requires that demands against deceased parties must be strictly proved, and to relax that rule would give rise to evils far outweighing the inconveniences resulting from its strict enforcement, inconveniences which could be obviated by the exercise of ordinary care in procuring written or other evidence of contracts not dependent for validity upon the continuance of the life of either party. * * *

"It seems to be well settled that claims against the estates of deceased persons, in order to be upheld, must be clearly proved by competent evidence, and be free from any just or well-grounded suspicion of their validity." Winne v. Hills, 91 Hun, 89, 36 N. Y. Supp. 683.

In view of all the testimony given in reference to this claim and the law applicable to the claims presented by legal representatives of an estate, the testimony given by the son of the claimant is not such clear and satisfactory testimony as would warrant me in finding that it is a proper or just claim against the estate of the decedent.

I am therefore of the opinion that it should be disallowed. Findings and decree may be prepared accordingly. Costs to the attorneys to be adjusted at the time of settling the decree.

Decreed accordingly.

---

(63 Misc. Rep. 618.)

## In re VIVANTI'S ESTATE.

(Surrogate's Court, New York County. June, 1909.)

1. TAXATION (§§ 865, 895*)—INHERITANCE TAXES—PROPERTY SUBJECT—ASSESSMENT OF TAX.

    While the good will of decedent's business at the time of his death is a taxable asset of his estate, yet, where it is dependent for success upon its patrons' confidence in the personal skill and integrity of decedent, it should not be assessed for transfer tax above the amount that decedent actually realized from it during the last year of his life with his capital and personal supervision.

    [Ed. Note.—For other cases, see Taxation, Dec. Dig. §§ 865, 895.*]

2. TAXATION (§ 866*)—TRANSFER TAXES—PROPERTY SUBJECT.

    Leases of land in Japan from the Japanese government at a fixed rent so long as the rent should be paid are not assets of decedent's estate, and his interest as a tenant thereunder is not taxable under the law relating to taxable transfers.

    [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 866.*]

Application for assessment of transfer tax on estate of Ferruccio A. Vivanti. From the report of the appraiser assessing the tax, the executor appeals. Modified.

John S. Jenkins (Edgar N. Dollin, of counsel), for State Comptroller.

W. M. Rosebault, for executor.

THOMAS, S. If, as both of the parties to this appeal appear to assume, Mr. Greenbaum upon his admission as a partner in the firm of Vivanti Brothers acquired the right and assumed the obligation to continue to carry on the business of the firm for at least 10 years after the death of the decedent, paying for the good will

*For other cases see same topic & § NUMBER in Dec. &, Am. Digs. 1907 to date, & Rep'r Indexes

thus acquired a portion of his annual profits during such period,, this was a transaction inter vivos, and, if any advantage accrued to Mr. Greenbaum because of it, the value of that advantage was not a taxable asset of the decedent. As I construe the documents, I cannot agree that any such bargain was made between the decedent and Mr. Greenbaum, or that he acquired by virtue of any contract with the decedent a right, either absolute or contingent, to the good will or to the use of it, and this construction appears to be the one adopted by the parties, for the contract under which Mr. Greenbaum ·is carrying on a business similar to that of the old firm is one made between him and the widow, and differs substantially in its terms from the contract with Mr. Tegner, to whose rights Mr. Greenbaum is supposed by counsel to have succeeded. The good will of the firm of Vivanti Bros. was, however, an asset in which the estate of the deceased partner had an interest, though not an absolute title to the exclusion of the surviving partner, and the value of this interest, which passed beneficially to the widow of the decedent; was properly taxable. The appraiser values this good will at $59,088.21, and treats the whole of this value as an asset of the estate. The method of appraisal adopted by the appraiser would seem by the figures to have been to take the average annual profit of the firm for the four years preceding the decedent's death, to wit, $39,392, compute 15 per cent. of that amount as being the probable profits which would hereafter be payable by Mr. Greenbaum under his contract with the widow, and multiply the result by 10, the number of years for which the contract is to continue. This method of computation ignores the fact that the nature of the business was that of brokers in silks, and was largely personal, depending much for its success upon the confidence reposed by vendors and purchasers of silks in the capacity and integrity of the persons acting as such brokers, and that the decedent, who created the business, contributed to carrying it on, in addition to his own knowledge, skill, and business reputation, at least $125,000 in the way of capital, besides the credit arising from his large wealth. For all of this he demanded only 60 per cent. of the net profits of the firm for the last year of his life, and 75 per cent. for previous years. The business is now to be carried on by his former junior partner, without any capital from the estate, and the decedent's reputation is a mere memory. The present capital employed is contributed by a special partner, and amounts to only $50,000. It is, of course, utterly impossible to estimate with any degree of accuracy the annual payments which will be made by Mr. Greenbaum under his contract, and I think that the interest of the decedent ought not to be estimated at any sum exceeding the amount actually received by the decedent as his share of the profits of the business for the last year during which it was conducted under his direction and with his capital and personal assistance, to wit, $25,374. The valuation is therefore reduced to that figure.

The decedent's rights in certain lands in Japan were taxed as personal property. Each parcel of this land is represented by a

lease from the Japanese government to the decedent or to the grantor of the decedent, his heirs, executors, administrators and assigns, at a fixed and stipulated annual ground rent, to run as long as such ground rent shall continue to be paid, with the right to the lessee to transfer the lease or rights therein acquired to any person who is a citizen or subject of a country having a treaty with Japan. In the terms of our law these leases can perhaps be described as perpetual leases reserving rent. Under our law a perpetual lease of this kind is not an asset passing to executors or administrators, but is real property, which passes to the heir (Code Civ. Proc. § 2712; Millard v. McMullin, 68 N. Y. 345, 352), and it is real property within the definition of that term contained in chapter 18 of the Code of Civil Procedure relating to Surrogates' Courts. Code Civ. Proc. § 2514, subd. 13. In imposing transfer taxes we are administering a statute of this state, and if the rights of the decedent in these Japanese lands are, within the meaning of our law, real property situated in a foreign jurisdiction, the transfer tax law (Consol. Laws, c. 60, §§ 220–245) furnishes us no authority for imposing the tax. If the nature of the property be determined according to the Japanese law, and if we are permitted to examine and rely upon the evidence of that law contained in the record, the result will be the same. It is by the rules furnished by one or the other of these bodies of law that the question is to be determined. Savage v. O'Neil, 44 N. Y. 298. On broader and perhaps less technical grounds the courts of this state should not be astute to impose a tax on interests in land situated within the limits, of a foreign jurisdiction of a character which we in this state would regard as real property, in view of the fact that the lawmaking body of this state has carefully refrained from imposing any tax or charge upon real property outside the limits of this jurisdiction. The order must be reversed as to the tax upon the transfer of this Japanese real estate.

The ruling of the appraiser, refusing to deduct from the appraisal the value of the widow's dower right, is affirmed. Estate of Henry I. Barbey (Sur.) 114 N. Y. Supp. 725, and cases cited.

The valuation of the properties Nos. 50 and 52 East One Hundredth street will be reduced to $28,000 each, upon the evidence submitted.

As to the excess commissions, upon the stipulation filed their amount must be fixed at $2,864.68, and a tax will be imposed thereon against the executor at 5 per cent. Tax Law, § 226 (Consol. Laws, c. 60). This sum is included in the valuation of the income of the life beneficiary, and there is consequently a double taxation. To avoid this the sum of $2,864.68 must be deducted from the value of the property passing to such life beneficiary.

Settle order on notice.