Howard A. Zeller, J.
This is an action brought for partition of the premises located at 17 Yarick Street, Binghamton, New York and occupied by defendants Caruso under claim of legal title since April 30, 1946.
Simon Burke, who acquired title to the premises in 1880, died intestate February 19,1900, and his wife Ellen died in 1903. Six children survived to take title to the premises as tenants in common: Elizabeth Burke, Thomas Burke, Emma Mooney,
Frederick Burke, Lena T. Lanier and Peter Burke. These respective cotenants occupied the premises for various periods of time, but Lena T. Lanier and Peter Burke eventually became the sole occupants and continued as such until April 30, 1946. Frederick Burke had quit the premises sometime prior to August, 1924, by which time he was residing in Detroit.
Elizabeth Burke and Thomas Burke died intestate in 1943 neither having ever married. Frederick Burke died October 5, 1944 leaving as his sole distributee a daughter, Ellena May *1052 Dickson, plaintiff herein, who was born in Detroit, Michigan on August 9, 1924.
By quitclaim deed dated June 23, 1945 and recorded six days later, Peter Burke conveyed the Yarick Street property to himself and his sister Lena T. Lanier, as joint tenants with right of survivorship. By quitclaim deed dated and executed September 14, 1945 and recorded April 10, 1946, Emma M. Mooney conveyed her interest in the Yarick Street property to her sister, Lena T. Lanier.
By warranty deed dated and executed April 30, 1946 and recorded the next day Lena T. Lanier and Peter Burke purported to convey the entire fee in the Yarick Street property to Patrick Caruso and Evelyn Caruso, defendants herein, who have had continuous possession and occupancy of the property from April 30, 1946, under claim of title. Deed stamps in the amount of $7.70 are affixed.
Defendants’ deed recites: “ Elizabeth Burke died intestate on January 18, 1943 and was never married. Thomas Burke died intestate on June 16,1943 and was never married. Frederick Burke died intestate on October 5, 1944 and was never married. The sole distributees of Elizabeth Burke, Thomas Burke and Frederick Burke were Emma Mooney, Lena T. Lanier and Peter Burke.”
The deed recital was knowingly false insofar as it pertains to Frederick Burke as the grantors were well aware of the existence of their niece, Ellena May Dickson, who then had legally succeeded to a one-fourth interest in the property through her father, Frederick Burke. Plaintiff Dickson herself was unaware in fact of the existence of any such interest until so advised by her Aunt Emma Mooney in 1956. The Carusos had no notice, knowledge or even suspicion of such an outstanding interest until initiation of this action 5% months short of 15 years from the date of their deed.
Plaintiff recognizes the adverse nature of the Carusos’ holding, but contends there was no such adverse possession by the Carusos’ grantors so as to perfect the Carusos’ title by tacking. Defendants contend plaintiff’s interest in the premises was destroyed by an adversity of possession extending back more than the term prescribed by the Statute of Limitations.
Section 41-a of the Civil Practice Act states that the occupancy of one tenant in common is deemed the possession of the others “ notwithstanding that the tenant so occupying the premises has acquired another title or has claimed to hold adversely to the other. But this presumption shall not be made after the expiration of fifteen years of continuous occupancy by such tenant * * * or after an ouster by one tenant of the other.”
*1053 Plaintiff urges an interpretation of the statute which would require 15 years of adverse occupancy in fact before the Statute of Limitations on suits against such adversity could begin to run — in short, a 30-year term of adverse possession before title could be so perfected.
Defendants claim the import of section 41-a is that after 15 years of continuous exclusive occupancy by one tenant in common, the statutory presumption cannot be invoked thereafter by a tenant out of occupancy to defeat an adverse holding by the tenant in occupancy, without regard for when the adverse possession arose. It is argued that resort then must be had to common-law principles applicable to the ouster or disseisin of a cotenant to determine if and when an alleged adverse possession was initiated, from which time the statute could begin to run. This interpretation would allow the adversity to run concurrently with the exclusive occupancy, permitting title actually to be perfected by adverse possession in 15 years under the statute.
The legislative intent is not entirely clear regarding this 1949 statute, which apparently has not been heretofore judicially construed. This case does not require a judicial choice between the interpretations advanced by the parties or otherwise demand definitive construction of the statute.
Without according judicial approval to the interpretation advanced by the plaintiff, even its application to the facts found in this case nevertheless defeats plaintiff’s claim. And, of course, if defendants’ interpretation were to be adopted here the plaintiff could not succeed. With relation to Frederick Burke (and his distributee, plaintiff) the exclusiveness of the occupancy of Lena T. Lanier and Peter Burke arose in 1924, thus enabling the onset of adversity even under plaintiff’s interpretation of the statute to begin in 1939. The sole question for determination then is whether, subsequent to 1939 and for a period in excess of the five and one-half months preceding the sale of the premises to these defendants, the intent, overt acts and the holdings of Lena T. Lanier and Peter Burke were sufficiently open, notorious and hostile to the cotenancy interests of the plaintiff and her father as to constitute adverse possession.
The common-law presumption regarding cotenancies that the occupancy of one is the possession of all may be rebutted by open and overt acts hostile to the cotenancy and amounting to an exclusion of other cotenants. (See Sweetland v. Buell, 164 N. Y. 541; Florence v. Hopkins, 46 N. Y. 182.) The applicable measure of the adverse possession necessary to effect ouster *1054 is that ‘ ‘ it should be one which requires notice in fact to the co-tenant, or unequivocal acts, so open and public, that notice may be presumed of the assault upon his title, and the invasion of his rights.” (Culver v. Rhodes, 87 N. Y. 348, 353.) Thus, the perfected conveyance to a third party by a cotenant of an entire estate, the nature of which is contrary to, inconsistent with or in derogation of a cotenancy, may be treated as an ouster of the other cotenants. (Sweetland v. Buell, 164 N. Y. 541; 551; Millard v. McMullin, 68 N. Y. 345.)
In the instant case by deed dated and acknowledged June 23, 1945 Peter Burke conveyed to himself and Lena T. Lanier “ as joint tenants, and not as tenants in common, with right of survivorship ” the entire Varick Street premises, without qualification of his title or interest therein. This deed was recorded June 29, 1945. By quitclaim deed dated and acknowledged September 14,1945, Emma Mooney conveyed to Lena T. Lanier “ All of party of the first part’s right, title and interest in and to ” the Varick Street property. This deed was recorded April 10, 1946.
Emma Mooney in particular, Lena T. Lanier, their other brothers and a sister maintained some contact over the years with the plaintiff and with their brother Frederick until his death. Indisputably, Emma Mooney recognized that Frederick had at least a bare legal interest in the property to which plaintiff succeeded. Mrs. Lanier and Peter Burke can be charged with no less knowledge. But the transfers to Mrs. Lanier alone by Emma Mooney and Peter Burke ignored equities commonly existing among cotenants by increasing Mrs. Lanier’s estate while confining, if not actually cutting off plaintiff’s estate. And Frederick Burke himself ignored this interest over the years to the point of failing even to acquaint this plaintiff with its existence. Thus, less than a year after Frederick’s death, Mrs. Lanier had sought and secured in her name solely a deed to Mrs. Mooney’s entire interest, and also had acquired Peter Burke’s entire interest contingent only on her survival. It does not appear that any consideration supported these transfers.
The true factual import is that Emma Mooney fully acceded to Lena T. Lanier’s assertion of an exclusive right to the premises. Peter Burke, who was Mrs. Lanier’s joint occupant, also recognized a superior claim by Mrs. Lanier to the premises, but understandably his conveyance to her stopped just short of jeopardizing the roof over his head should she predecease him. Lena T. Lanier had asserted for years an exclusive right to the premises as to all but Peter Burke, in whose interest she *1055 nevertheless claimed and subsequently received an exclusive survivorship right.
From the 1930s Lena T. Lanier asserted to neighbors that the premises were hers free and clear and denied that any actual interest remained in her brothers and sisters. She kept the property in repair over the years, received the rents, paid the taxes, and generally performed acts consistent with the claim of ownership. At least as to Frederick Burke, the plaintiff, and Emma Mooney, there appears to have been no accounting of the rents or distribution of the net proceeds from this income property.
It is not material whether Mrs. Lanier’s intent to claim the premises to the exclusion of all other interests, including Frederick’s, arose from a sincere claim of right based on equities within the family, a deliberate adverse design or, perhaps, from a mistaken conclusion of law either that Frederick’s interest in the premises died with him, or already had tacitly passed to the others by abandonment. The intent nevertheless existed, was open, notorious and concurred in by all her brothers and sisters.
The elements of adversity are found to have been sufficiently present here not only to start the running of the statute against Frederick Burke himself, but also to rebut any presumption which otherwise might have arisen to aid this plaintiff that Lena T. Lanier’s acquisitions of other titles were for the benefit of the remaining legal cotenants rather than for herself alone.
It is found that ‘ ‘ In this case, every act essential to establish an exclusive ownership was committed * * * continuous
possession, keeping the property in repair, receiving rents, asserting title, paying insurance and taxes, with the assessment to [the occupants] and later to the defendant constituted a series of acts which go to make up this claim of ownership, and are all which any owner would perform. Any one of these acts may have been insufficient to mature into a title by adverse holding, but all combined form a chain which irresistably establishes it.” (Zapf v. Carter, 70 App. Div. 395, 400, appeal dismissed 176 N. Y. 576.)
Neither the acceptance of the Peter Burke or the Mooney deeds, nor the patently false recital in defendants’ deed of Frederick Burke’s intestate death without having married constitute per se an estoppel to assertion of a pre-existing adverse claim against those interests. (Zapf v. Carter, supra; Green v. Couse, 127 N. Y. 386.) Such acts here are construed as being *1056 in fortification rather than in derogation of the claim of adverse title initiated by defendants’ grantors prior to Frederick Burke’s death.
Plaintiff was under the disability of infancy until August 9, 1945, but once adversity had begun to run validly against the predecessor’s interest, the infancy of the successor to that interest will not toll the statute. (Scallon v. Manhattan Ry. Co., 185 N. Y. 359.)
It is decided that defendants’ title to the Varick Street premises has been fully perfected by virtue of tacking to their 14 years 6% months of adverse possession, the more than 5% months of effective adverse possession against plaintiff’s interest held by defendants’ grantors. Plaintiff’s complaint should be dismissed upon the merits, without costs.