[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 396 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 397 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 398 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 399 
Egan the appellant, the purchaser under the decree of foreclosure, objects to the title on the ground that there are outstanding mortgages; and also, that the conveyance to O'Brien, the mortgagor, was invalid.
One of the mortgages was given about 84, and the other 66 years before the sale. The referee does not find when they became due, nor who has since been in possession; but he states that no evidence was given of payment upon them, or of an acknowledgment of indebtedness thereupon, at any time; and he therefore finds they have been paid and satisfied. Without explanation, the presumption of payment arises from the lapse of time, in favor of a mortgagor in possession. (Ang. on Lim., 492 et seq., andcases there cited; 2 Hill on Mort., ch. 27; 2 Sug. on Ven. Pur., 361; Matt. on Pres. Evid., 329 et seq., 352 et seq.;
2 R.S., 301, § 48.) It would have been more satisfactory if the referee had found the facts in relation to the possession, c.; but he has found the mortgages paid and satisfied; and theonus, after this great lapse of time, may be considered to rest upon the purchaser. I think these mortgages constitute no valid objection to the title. *Page 401 
The important question in this case is as to the validity of the deed to O'Brien; for if the conveyance to him was not authorized, the purchaser at the sale upon the mortgage he gave should not be compelled to fulfill his contract of purchase.
Some eminent jurists in this state have said that land held in trust is inalienable. (See Wood v. Wood, 5 Paige, 600;Hawley v. James, id., 318; S.C., 16 Wend., 61; Coster
v. Lorillard, 14 id., 265; Kane v. Gott, 24 id., 641;Irving v. De Kay, 9 Paige, 530; S.C., 5 Den., 646; VanEpps v. Van Epps, 9 Paige, 237.) And §§ 63 and 65 of the article "Of Uses and Trusts" no doubt have had an important influence in the construction of several wills, which have taken effect and have come before the court since those sections have been in force. Chief Justice Savage, in the case of Lorillard's will, remarked in relation to a clause which it was contended authorized a sale of the income at least of trust property, "the statute is paramount and must control the provisions in the will." (14 Wend., 304.) And the language of Mr. Justice Nelson and some of the other members of the court was very much to the same effect.
Section 63 inhibits the assignment or disposition of the interest of a person beneficially interested in a trust for the receipt of the rents and profits of lands. And by § 65 every sale, conveyance, or other act of trustees, in contravention of the trust, is declared to be absolutely void, where the trust shall be expressed in the instrument creating the estate. (1R.S., 730.) In this case, the trustees by the deed creating the trust, are to have, take, collect and receive the rents, issues, profits and other income of the property, for the separate use and benefit of the cestui que trust, and apply the same to her separate use. This is a valid trust within § 55, and the estate passed to the trustees so long as the execution of the trust should require it. But the same deed also, in express terms, authorizes the trustees *Page 402 
to sell and convey all or any part of the trust premises, or any other premises in which the proceeds thereof may be reinvested, and invest the proceeds in any other real estate; or on bonds and mortgages within the state, or in certain public stocks, c., and to alter and change such investments; and the rents and profits and income thereof are to be applied upon the same trusts. And the question is, whether a sale of the real estate or a portion of it by the trustees, under these provisions in the trust conveyance, is in violation of the statute.
It was said by the chancellor in Hawley v. James (5Paige, 444, 445), that "the mere exchange of one piece of property for another by a trustee, under a valid power in trust, is not considered as an alienation of the estate or interest of the cestui que trust, or person beneficially interested in the trust estate;" and again, "a mere power to exchange lands, whether such exchange is made directly, or by means of a sale and new purchase, is not a power to alien the estate, within the intent and meaning of the provisions of the Revised Statutes on this subject." And Mr. Justice Bronson expressed the same opinion when the cause came before the court for the correction of errors. (16 Wend., 163, 164.) And, consequently, such a power would not obviate the objection as to inalienability, within the rule against perpetuities. If this be so, and it would seem that some of the decisions under the present statute must have involved the very point, it must be upon the ground that, notwithstanding the power, the fund is inalienable. The application of this principle to this case is necessarily a strong argument, if not conclusive, in favor of the plaintiffs. It is admitted that this instrument would have conferred an authority to sell before the Revised Statutes; and if a sale for the purpose of reinvesting in other lands, to be held in trust for the same purposes, is not an alienation within §§ 63 and 65, and §§ 14 and 15 (1 R.S., 723), then the sale is valid. And the purchaser is not even bound to see that the money is applied to the purchase of other lands. *Page 403 
(1 R.S., 730, § 66.) And I do not see why the power would not also have been valid, if the proceeds were to have been invested only in stocks or on bonds and mortgages to the same uses, and not in the repurchase of lands.
But if a sale by the plaintiffs be considered simply an alienation, I cannot think it is void as being prohibited by § 63 or § 65. This was an antenuptial agreement; and powers of sale and exchange have been considered usual and proper in marriage settlements. (Sugd. on Pow., 181; Sugd. on Sales, c., 109;Brewster v. Angel, 1 J. W., 608; Peak v. Penlington,
2 V. B., 311; Hill on Trust., 472; Hill v. Hill, 6Sim., 136.) The want of such power might sometimes be very prejudicial to those having an interest in the trust property. The phraseology of the statute in relation to trusts, and that in regard to powers, are not the same. Uses and trusts, except as there authorized and modified, are abolished; and the statute enumerates and defines the express trusts allowed by law. (1R.S., 728, §§ 45, 55.) It is also declared that powers, as they then existed by law, were abolished; and that, from thenceforth, the creation, construction and execution of powers should be governed by article third, "Of Powers." (1 R.S., 732, § 73.) And the next section defines a power, and that is followed by a classification of them; but there is no such particular specification or enumeration of what are lawful, as in the article on trusts. There are powers unconnected with trusts (2Sugd. on Pow., 187; 1 R.S., 732, 733; and see id., 734, § 96); and powers in the nature of trusts. (2 Sugd. on Pow.,
173.) Most or all of the latter are by statute now denominated powers in trust; between which and a trust, or an estate held in trust, the statute recognizes an obvious distinction; although some of the trusts specified in § 55 are more properly mere powers in trust.
No doubt the object of the execution of a power in trust should be for a lawful purpose. As, for instance, if it be to create a perpetuity, the power would be invalid. (1 R.S. *Page 404 
737, § 128; 1 Sugd. on Pow., 181; 2 Prest. Abs., 158, 496.) The statute must be allowed full force; and neither the trustee or the person beneficially interested can legally do any act in contravention of the trust; and courts cannot too carefully watch the rights of cestui que trust. But it could never have been intended to take away the power of the absolute owner of the property to limit the duration of the trust by a power in trust within the rule against perpetuities. A power of revocation is recognized by the statute. (§§ 86, 105, 108, 114.) And trusts, under the third subdivision of § 55, may be for a shorter term than for life. The powers of charging, selling, exchanging, jointurning and leasing, usually inserted in marriage settlements, are in effect powers of revocation and appointment; and postpone, abridge or defeat, in a greater or less degree, the previous uses and estates, and appoint new uses in their stead. They operate as a limitation of the use. Until the conveyance,c., this authority is a power, and when executed, operates by way of appointment; but derives its effect, except as to time, from the instrument by which the power was created. (SeeButler's Note, 231, to Co. Litt., 271 b.; 1 R.S., 726, § 41.) The revision of our statutes has made great changes in our law of real property; but the absolute owner of real estate, subject to the statutory provisions, has the entire disposition as before, and may create future estates, limit new uses, charge the estate, c., himself, or by granting a power. And I do not see why a trust and a power in trust, in a proper case, may not still exist together, where they are not inconsistent. (Prest.Abs., 104, 158; and see 1 R.S., 729, § 58; ib., 732, § 74;ib., 735, § 105 Boyce v. Hanning 2 Cr. and Jer., 334.) The same *Page 405 
power to sell and terminate the present use and appoint the money, it could never have been the intention of the legislature, not only to frustrate the intention of the grantor, but to make an entirely different conveyance; one giving a larger estate to the present cestui que use, at the expense perhaps of some other intended beneficiary or appointee. Where a sale is directed in the instrument creating the trust, such sale is not "in contravention of the trust." Nor is it repugnant to the grant or devise; for that provides the defeasance, new use, executory limitation, or whatever it may be. In most of those cases in our courts, where the 63d and 65th sections were said to have rendered the property inalienable, the fund, or some part of it, or the income, was to be held in trust for a period not allowed by law. And in such cases, a power of sale and exchange, or of conversion for the same purposes, did not remove the objection of inalienability. But if the purpose be lawful, there can be no objection to a power of sale under the express direction of the original owner and grantor, given at the time he creates the trust. (And see Chance on Pow., Nos. 313, 314, 315, 321, 322, 323; 2 Prest. Abs., 158, 159; Sugd. on Pow., 179, 180, 1812; 2 id., 483, 493.)
The objection, that the deed from Belmont to Larocque gave the latter no authority to grant such a power, is not well taken. The two deeds, for that purpose, might be considered one instrument; and besides, the first provided that the other should be executed immediately after, "in such manner and upon such trusts, covenants and conditions as" the grantor should "direct and approve."
The conveyance by the surviving trustees was good without the appointment of a new trustee in place of Mr. Griffin. Authority was given to the survivors to fill the vacancy, but they were not required to do so; and it is therefore not necessary to inquire what would have been the rule, if the direction had been positive and imperative. *Page 406 
The order of the general term, affirming the order at special term, should be affirmed.
DENIO, RUGGLES, JOHNSON, MARVIN AND CRIPPEN, Js., were also in favor of affirmance.
GARDINER, Ch. J. and DEAN, J., dissented.
Order affirmed.