WILLIAM H. NEARPASS as Trustee, etc., et al., Appellants, *v.* FRANKLIN NEWMAN, Jr., et al., Respondents.

F., for the purpose of making provision for the support of his wife and children, entered into a tripartite agreement with her and J., as trustee, whereby he conveyed to J., certain land, in trust, to sell and convey the same, invest the proceeds and pay the income to her during her life. Subsequently the same parties entered into another agreement, which recited that F. desired to make still further provision for his wife and children, and for that purpose, on condition that the wife should perform certain covenants therein contained on her part, he agreed to quit-claim to J., " all his right, title and interest to and in " said land, and to pay J $300 a year for the support and education of each of two of said children until they respectively became of age; the deed and bill of sale to be put in *escrow*, to be delivered and to become operative and in full force and effect when the covenants on the part of the wife were performed; but to be returned to F., if not so performed. A quit-claim deed was executed by F., as agreed. J., thereafter sold the land and with a portion of the proceeds purchased a house and lot, which, by the terms of the deed, were conveyed to him " as trustee by and under a deed of trust " from F., and his wife: the balance was invested in U. S. bonds. Subsequently the same parties, with defendant F. N., Jr., as party of the fourth part, entered into an agreement which recited the receipt by J., under the first deed of trust, of certain property in trust for certain purposes therein mentioned " the sale of said property and the investment of the proceeds as stated, that said defendant was to be substituted as trustee in place of J., and the conveyance by the latter to said defendant of said house and lot and delivery of the bonds. By the terms of the agreement, in consideration of the transfer. F , and wife released J from all claims and demands, and said defendant agreed to take said house and lot 'and hold the same as trustee pursuant to the covenants and conditions in said trust deed contained in the place " of J. By the conveyance referred to J., " individually, and as trustee " conveyed all his " right, title and interest in and to the house and lot to said defendant as trustee in place and stead " of J , " under said deed of trust." Said defendant thereafter acted as trustee until the death of the wife, which occurred after the two children named became of age. F. thereafter claiming a reversionary interest in the property so held by said defendant conveyed the same to plaintiffs. In an action to recover possession of said property *held,* that the effect of the first deed and trust agreement was to create a valid trust in J.; that the reversionary interest in the land remained in the creator of the trust and on the death of his wife reverted to him; that the land

Statement of case.

so conveyed was not exempted from the limitations and conditions of the trust by the subsequent deed and agreement between the same parties; that said limitations and conditions followed the property into which the estate was converted and it became subject to the same rule of reversion· and that, therefore, the *corpus* of the trust estate reverted to F., and passed under the conveyance from him to plaintiff.

Also, *held,* that whatever effect might be ascribed to the quit-claim deed from F. to J., all of the interest thereby conveyed was reconveyed to said defendant F. N., Jr., by the last agreement, the original trust was redeclared and the whole property reconstituted a trust fund, subject to the limitations and conditions of the original agreement.

For the purpose of ascertaining the interest of parties in making a contract, invalid as well as valid, provisions in the contract may be resorted to.

(Argued April 22, 1887; decided June 7, 1887.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 9, 1884, which reversed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to recover possession of certain real and personal property held by defendant Franklin Newman, Jr., to which plaintiffs claimed title under a conveyance from Franklin Newman.

The material facts are stated in the opinion.

*Esek Cowen* for appellants. The trust property reverted to the creator of the trust on the death of the *cestui que* trust. (2 R. S. [6th ed.] 1110, §§ 75, 80.)

*John D. Pray* and *Mr. Hubbard* for respondents. A delivery of a deed to a grantee named in it, though intended by the parties to be delivered as an *escrow* upon certain conditions, nevertheless, vests the title absolutely in the grantee. (*Worrall* v. *Munn*, 5 N. Y. 229; *Gilbert* v. *N. A. F. Ins. Co.*, 23 Wend. 45; *Lawton* v. *Sager*, 11 Barb. 349, *Braman* v. *Bingham*, 26 N. Y. 483–492.) The deed effectually vested the reversion in John D. Neefus the grantee. (1 R. S. 748, § 1; 1 id. 739, § 142; *Jackson* v. *Fish*, 10 Johns. 455; *Lynch* v. *Livingston*, 6 N. Y. 422; *Ham* v. *Van Orden*, 84 id. 257; *Rockwell* v. *Brown*, 54 id. 213.)

RUGER, Ch. J.   The proof in the case is wholly docu-
mentary and the only question arising thereon is whether,
upon a proper construction of the several instruments read in
evidence, Franklin Newman retained a reversionary interest in
the property thereby tranferred after the trust purposes, for
which he had conveyed it, were satisfied.   Perhaps a more
accurate statement of the question presented would be,
whether certain real estate once conveyed by him to a trustee
for specific purposes, was exempted from the limitations and
conditions of the trust by a subsequent deed and agreement
between the same parties.

The case shows that prior to the year 1864, Newman and
his wife lived unhappily together and were desirous of mak-
ing an arrangement by which they could live separately.
They were the parents of four children whom it was thought
desirable should reside with, and be supported by the mother.
Newman had theretofore given to his wife $9,000, and being
willing to provide more largely for her support, on the 7th
day of December, 1864, entered into a tripartite agreement
with his wife and one John D. Neefus as trustee, whereby he
conveyed to said Neefus and his successors and assigns, thirteen
and one-half lots of land in the city of Brooklyn, to be held and
used by such trustee for the following purposes and conditions,
viz. :  To sell and convey the same and invest the proceeds
in bonds of the United States or of the State of New York,
and pay the income thereof to Harriet Newman during her
natural life for her support and that of her four children.
This deed and agreement was duly recorded in the register's
office of Kings county, December 9, 1864.   Within a year
thereafter the parties having determined that the peace and
happiness of Newman and his wife and of their children
would be promoted by an absolute divorce, on April 8, 1865,
entered into another agreement between each other, and with
Neefus for the purpose of promoting such divorce.   In this
agreement it was recited that Newman desired to make still
further provision for his wife and children than was made in
the previous trust deed, and for that purpose, upon condition

that said Harriet should faithfully perform the covenants therein contained, agreed " to quit-claim to said Neefus all his right, title and interest to and in the certain thirteen and a half lots previously conveyed to said Neefus." He also agreed, upon the same condition, to give to Neefus, for the use of said Harriet, a bill of sale of certain furniture, to pay certain bills for board of the children, to pay Neefus $300 a year for the support and education of each of two of Newman's children until they should, respectively, become of age, to execute and deliver his own bond for $2,000, with collateral security, for the payment of such allowance. It then provided that " said quit-claim deed, also said bond with collateral, and the bill of sale, all to be put in *escrow* (said Neefus the party) to be delivered when said Harriet faithfully performs all her covenants hereinafter contained, but to be returned to said Newman if not so performed." Certain covenants are then made by Harriet that she will facilitate the proceedings for a divorce by all means in her power ; that out of the provisions heretofore and herein made, she will support herself and her children, and that neither by herself or the chidren will she run up bills, or incur debts in Newman's name. It was further provided that in case Harriet should fail to perform her several covenants the agreement should be declared null and void, and Neefus should deliver back to Newman the quit-claim deed, bond and collateral, and bill of sale, but in case Harriet performed her covenants to facilitate such divorce, then said papers delivered to Neefus in *escrow* " shall become operative and in full force and effect." It is then further provided " that the furniture taken, together with the several valuable properties heretofore conveyed to said Harriet, or caused to be conveyed, or in trust for her and childrens' benefit, shall be and hereby is taken in full satisfaction, and bar of and to all or any claims whatsoever on said Newman, whether for her said Harriet's own or childrens' account." A quit-claim deed, dated April 17, 1865, from Newman to Neefus and to his heirs and assigns, of the thirteen and one half lots of land, was also put in evidence. This deed was

duly recorded in the clerk's office of Kings county, on April 18, 1865.

The next instrument in chronological order, was a warranty deed, dated April 13, 1868, from Mary Jarvis and David R. Jarvis, her husband, of a house and lot on Jefferson street, Brooklyn, to "John D. Neefus, as trustee by and under a deed of trust from Franklin and Harriet Newman," for the consideration of $6,500.

Next follows an agreement made on January 18, 1872, between Franklin Newman of the first part, Harriet Newman of the second part, John D. Neefus of the third part, and Franklin Newman, Jr. of the fourth part. This agreement embraces the following recitals: "Whereas by a certain deed of trust made between the parties hereto of the first, second and third parts, bearing date the 7th day of December, 1864. * * * The said party of the third part received certain real and personal property in trust for certain purposes therein mentioned. And whereas such property so received in trust by said party has been sold and the proceeds thereof have all been invested in a house and lot in Jefferson street near Ormond place in the said city of Brooklyn, and in four United States six per cent bonds of $1,000 each. And whereas at the request of the said parties of the first and second parts, and with the consent of the said parties of the third and fourth part, the said party of the fourth part, is to be substituted as trustee in the place and stead of the said party of the third part, subject to all the covenants and conditions in said trust deed contained. And whereas the said party of the third part has conveyed to said party of the fourth part by deed bearing even date herewith, the house and lot in Jefferson street, and has also simultaneously with the execution hereof, delivered to said party of the fourth part the said four United States bonds for $1,000 each, being all the property, money or proceeds in the hands or possession of said party of the third part, under and pursuant to said deed of trust."

In consideration of the premises it was ther provided that

the parties of the first and second part should release and discharge the party of the third part from all claims and demands whatsoever. · The party of the third part did thereby also, in consideration of the premises, "transfer, assign and set over to said party of the fourth part, the said Jefferson street house and United States bonds and all and every right, claim or demand which he may or shall have for or by reason of said deed of trust, and the said party of the fourth part, in consideration of the conveyance to him of the said house and lot and of the delivery of said bonds, did " consent and agree to take said house and lot and bonds and hold the same as trustee, pursuant to the covenants and conditions in said trust deed contained, in the place and stead of the said party of the third part." On the same day " John D. Neefus individually, and as trustee, by and under a deed of trust from Franklin and Harriet Newman," and Mary Ann, his wife, conveyed by quit-claim deed, all of the estate, right, title and interest, both in law and equity, of, in or to the house and lot on Jefferson street to " Franklin Newman, Jr., as trustee in place and stead · of said John D. Neefus, under said deed of trust," and to his successors and assigns forever.

From this time forward Franklin Newman, Jr., acted as trustee under the original trust deed, until the death of Harriet Newman which occurred in July, 1882. Harriet Newman left a will by which she demised all of her property to her daughter Mary and her son Franklin, and appointed her son Franklin sole executor of her will. On December 9, 1882, Franklin Newman, claiming to be the reversionary owner of the property held by Franklin Newman, Jr., conveyed it to the plaintiffs, and this action was brought by them to recover possession of the same. The effect of the deed and trust agreement of December, 1864, was to create a valid power in trust, to convert the land conveyed into money and invest the proceeds in securities in which Harriet Newman was to have a life estate only. (*Belmont* v. *O'Brien*, 12 N. Y. 394, 395.) The reversionary interest in the land not having been conveyed by such instrument

remained in the creator of the trust, and upon the death of Harriet Newman reverted to him under the provisions of the statute. (3 R. S. [7th ed.], p. 2182, § 62.)

It is also quite clear that the limitations and conditions of the attempted trust followed the property into which the estate was converted and it became subject to the same rules of reversion which pertained to that originally conveyed. (*Belmont* v. *O'Brien, supra.*) These propositions were assumed to be correct by both the General and Special Terms in their consideration of the case, and may be regarded as conclusively settled.

It was, however, held by the General Term that Franklin Newman, by the execution and delivery of the quit-claim deed of April 17, 1865, transferred to Neefus his reversionary interest in the trust fund, and that it then became vested absolutely in Neefus, and still remains in him, or the trustee Franklin Newman, Jr., who was substituted in his place. The defendants' answer alleges impliedly, if not directly, that this reversionary estate was held by the trustee for the benefit of Harriet Newman, and upon her death descended or was distributable to her three children and the issue of the fourth who had died. This contention is hardly sustainable in view of the fact that Harriet Newman left her property, by will, exclusively to two of said children, and any reversion to which she was entitled, is apparently controlled by its provisions. This result is claimed to be produced by the provisions of the agreement of April 8, 1865, which it is argued created a trust in the reversionary estate for the benefit of Harriet Newman.

We are of the opinion that no trust was created by that agreement and that under it Neefus acquired a mortgage interest only which became satisfied in 1871, by the performance of the obligation and the arrival of Franklin and Mary at maturity, and the termination of the period for paying annuities for their support. The case was considered at the General Term upon the theory that its termination depended solely upon the effect to be ascribed to the quit-claim deed, unaffected by the cotemporaneous agreement, and as thus

viewed, might afford some reason for doubt as to its true solution.

A careful consideration of the provisions of that agreement, however, leads to the conviction that there was no intention on the part of Newman or his wife to vest any personal interest in the property in Neefus. It was conveyed to him, indeed, but it was conveyed for a purpose, which it is the duty of the court to discover and enforce, if consistent with the rules of law. This purpose is clearly disclosed by an examination of the provisions of the agreement. Among other things, it appears therefrom that the sole consideration for the deed was furnished by Harriet Newman, and its object was declared to be " to make still further provision for said wife and four children." It was also provided that Neefus should reconvey the property to Newman in case the said Harriet " should fail to comply or perform in good faith her part of the covenants herein contained," and finally it was declared that "said quit-claim deed, also said bond with collateral and the bill of sale, all to be in *escrow* (said Neefus the party) to be delivered when said Harriet faithfully performs all her covenants hereinafter contained." The delivery here spoken of was a delivery to Neefus to take the place of the conditional delivery there made, because it obviously was not intended that Harriet Newman was to take Franklin Newman's bond or the judgment assigned as security therefor, or the bill of sale of the furniture transferred " for her use," which are therein spoken of in connection with the quit-claim deed. The idea that the property was to be reconveyed to Newman if Harriet failed to perform her contract is inconsistent with the theory of any personal interest in Neefus, while it was essential to the performance of his trust, as well as the enforcement of the security, that he should have the title of the property, with the power of converting it. On the other hand, if the reversion had been intended to be given to Neefus in trust for Harriet Newman, the legal estate would have vested immediately in her by force of the forty-ninth section of the statute, and the life estate and reversion uniting

in the same person, the former would have merged in the latter, thus destroying the trust. That this was not intended is shown by the repeated declarations of the parties as to the continued existence of the trust of 1864. It matters not whether the provisions of the agreement were all valid or not, for when the object of the inquiry is to ascertain the intent of the parties in making a contract, their meaning is as much revealed by the intent expressed in invalid as in valid provisions, and the court will avail itself of every lawful means to ascertain and give effect to the intention of the parties, if not contrary to law. It seems quite clear, therefore, that the object of the deed was simply to furnish additional security to Harriet, that Franklin Newman should promptly make the additional payments of income which he became liable to pay by the agreement. It certainly was not intended that Neefus should take the reversionary interest for himself, and there is no color of a provision in the agreement by which Harriet Newman was entitled to take it. Neefus received the property in question simply as a security for the performance of Newman's agreement, to be returned to Newman when the object of the transfer had been satisfied. The practical construction given to this conveyance and agreement by the subsequent dealings and conduct of the parties, and the various contracts executed between them, is quite controlling as to their real intention in making it. The thirteen and one-half lots were converted into money, amounting, presumably, to about $9,000. Six thousand five hundred dollars of this sum was invested in the house and lot on Jefferson street, the title to which was taken to Neefus, *as trustee under the trust deed of* 1864, and the balance in four per cent United States bonds.

By the agreement of January 18, 1872, it was recited that the properties were held by Neefus as trust property under the trust deed of 1864, and he thereby agreed to convey them to Franklin Newman, Jr., as substituted trustee subject to the conditions and limitations of the said trust, and the said Franklin Newman, Jr., received them solely as trustee under

such instrument.   The quit claim deed from Neefus to Franklin Newman, Jr., conveys all of the interest in the property held by Neefus, either individually or as trustee, to the grantee therein named *as trustee under such trust deed.* Whatever effect therefore may be ascribed to the deed of April 8, 1865, all of the interests thereby conveyed were reconveyed to Franklin Newman, Jr., and by the agreement of January 18, 1872, executed by all of the parties having an interest in the subject, and which was recorded in the register's office of Kings county, January 19, 1872, the trust was redeclared and the entire proceeds of the whole property were reconstituted a trust fund subject to the limitations and conditions of the deed and contract of December, 9, 1864.

It follows that upon the death of Harriet Newman, the *corpus* of the trust estate reverted to Franklin Newman and passed to the plaintiffs under the conveyance from him to them.

Other questions made in the case become immaterial in the view which we have taken of the questions raised.

The order of the General Term should be reversed and the judgment of the Special Term affirmed, with costs to the plaintiffs in the court below and in this court.

All concur.

Order reversed and judgment affirmed.