JOSEPH HAMERSHLAG and DAVID E. OPPENHEIMER, Appellants, *v.* OSCAR DURYEA, Respondent.

*Entries in old corporate books, as evidence of title — what adverse possession, under a conveyance by one tenant in common, gives a marketable title.*

Entries in the minute books of a corporation, made over fifty years ago and referring to things which were done at that time, showing that the corporation had exercised, from time to time, acts of ownership in respect to certain land, are competent to prove title to the land in the corporation by adverse possession.

Where one tenant in common in 1834 assumes to convey the entire premises in fee simple by a deed containing covenants of warranty and of seizin and of further assurance, and the grantee named in the deed enters into possession thereof and continues the same under a claim of exclusive ownership from 1834 to 1897, during which time its title has never been questioned by any one, but on the contrary has been recognized in the public maps, the title so acquired is marketable, and a contract vendee of a *mesne* grantee of the original adverse claimant will be required to accept such title.

APPEAL by the plaintiffs, Joseph Hamershlag and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 18th day of July, 1900, upon the decision of the court rendered after a trial at the New York Special Term.

*William H. Stockwell,* for the appellants.

*John L. Cadwalader,* for the respondent.

RUMSEY, J.:

On the 16th of October, 1897, the plaintiffs made a contract with the defendant by which they agreed to buy of him certain premises on the north side of One Hundred and Thirteenth street in the city of New York. One thousand dollars was paid down at the time of the signing of the contract, and the plaintiffs expended $237.50 in

examining the title. As a result of that examination they refused to perform, although the defendant tendered a deed, and they afterwards brought this action to recover the money which they had expended and the amount of the first payment. The defendant set up a counterclaim, in which he insisted that he had performed the contract on his part and that he had a good title to the premises, and demanded specific performance. A reply was served putting at issue the facts set up in the counterclaim. At the Special Term the court held that the defendant had a good title and adjudged that he was entitled to the specific performance of the contract, and from that judgment this appeal is taken.

It is conceded that the premises in question belonged in 1827 to one Ely Moore, and that Moore, in the month of November of that year, conveyed them to Thomas Sheperd and William Sheperd as tenants in common. On the 26th of November, 1834, Thomas Sheperd and wife made a deed of the premises to the New York Hospital. The title derived from the New York Hospital was the one transferred to the defendant and offered to the plaintiffs, and the question is whether it has been made to appear that the New York Hospital had acquired a valid title to the whole of these premises.

There is no record of any transfer from William Sheperd, nor is there any evidence of what became of him or of his title. The deed by which Thomas Sheperd undertook to convey to the New York Hospital granted all of the lots, and he gave a covenant of seizin of an absolute and indefeasible estate of inheritance in fee simple in all of the premises, with a covenant for further assurances and of warranty. That deed entirely ignored any rights of William Sheperd as tenant in common, and afforded to the New York Hospital a sufficient ground for the claim that it had become the owner of all of the premises, and undoubtedly if that corporation then went into possession claiming everything that was conveyed to it by the deed, its possession was hostile to that of Thomas Sheperd's cotenant (*Sweetland* v. *Buell*, 164 N. Y. 541), but yet that hostile possession was not necessarily the beginning of a title by adverse possession as against the cotenant.

It was held in this case upon a former appeal (38 App. Div. 130) that to begin an adverse possession sufficient to raise a presumption

of title as against the cotenant, there must be either notice to the cotenant that the claim is made, or such open and public acts on the part of the adverse claimant as will make his possession so visible, hostile, exclusive and notorious that notice to the cotenant of the adverse claim may fairly be inferred. At that time the evidence showed an adverse possession on the part of the New York Hospital extending back only to 1859, and while it was undoubtedly true that such possession would be sufficient *prima facie* to establish title in the New York Hospital in an action which might be brought against it by William Sheperd or his heirs at law, yet it was thought that such a title, depending as it did upon evidence which might be rebutted by showing a disability on the part of Sheperd or his heirs to sue, was not such a one as the court would be justified in requiring the purchaser to take. The question is whether the new evidence introduced is sufficient to cure the defects in the proof which existed at the time the other appeal was here.

That new evidence consists largely of ancient maps by which it was made to appear that the premises conveyed by Thomas Sheperd to the New York Hospital were inclosed by it and were plotted upon the various maps extending back about to the time of the original purchase, as belonging to it. This evidence was substantiated by entries in the books of the New York Hospital containing statements in respect to these lands, showing that the hospital had exercised acts of ownership upon them from time to time; that taxes had been assessed against it upon them as a portion of its property; that they had been sold for taxes; that, upon the petition of the hospital addressed to the officers of the city of New York, it was claimed that the property belonged to the New York Hospital and was held by it as owner and these taxes were remitted for the benefit of the hospital. There were also other entries tending to show acts done upon this property, which the hospital would have had no authority to do unless it had been the absolute owner of the whole title to the land.

If this evidence was competent it was sufficient to show that the hospital was in possession of these premises, claiming under an exclusive title as early as 1840 and probably earlier. As to the maps, there is no question as to the competency of this evidence, and indeed it does not appear that any objection is taken to them.

But it is seriously contended that the entries in the books of the hospital are not competent because they are substantially entries in its own interest. That these books in which the entries were made are the minute books of the hospital cannot be denied. They came from the place where such books are deposited, and the evidence tended to show that they bore all the evidence of genuineness. The minutes referred to things which were done at the time the entries were made, so that they are not a history of past transactions. They are ancient, having been made over a half century ago, and they clearly come within the exceptions to the rule rejecting hearsay evidence stated by Greenleaf in volume 1, sections 141 *et seq.* They were admitted for the precise purposes for which such evidence is competent under the rules laid down by Greenleaf, as tending to show ancient possession, and for the same purposes for which it was admitted in the case of *Bogardus* v. *Trinity Church* (4 Sandf. Ch. 633) and *Dodge* v. *Gallatin* (130 N. Y. 117).

There is no dispute as to the facts which are to be inferred from these books, and there is no suggestion that any adverse claim was ever set up to the right of the New York Hospital to hold this land in severalty as it claimed. We have, therefore, this situation, that the hospital having received in 1834 a deed from a person who was apparently a tenant in common with another by which he conveyed the whole interest in the lands, with covenants of warranty and seizin and further assurance, entered into possession under that deed which of itself was sufficient to oust the cotenant if the possession was accompanied by hostile acts; that such possession had continued from 1834 to 1897; that it had never been questioned by any one, and that the title had been recognized in public maps. Upon that testimony the learned justice below found that the New York Hospital entered into possession of these premises on the 26th of November, 1834, under a claim of title, and by open and public acts caused such occupation and possession to be visible, hostile, exclusive and notorious, and devoted the premises to uses inconsistent with the right of any claimant thereto, and cultivated and improved the same and protected it with a substantial inclosure, and that by such adverse possession the Society of the New York Hospital had acquired a good and marketable title to the whole of such premises under the conveyance to it from

Thomas Sheperd. That the facts sustain this finding cannot be disputed, and the question is, then, how long a possession is necessary to create such a presumption of title by adverse possession as will warrant the court in requiring the plaintiffs to accept the conveyance offered them by the defendant.

If there had been proof that William Sheperd was living when this deed was made and this possession was taken, there can be no doubt that the facts show a sufficient adverse possession to make this title marketable. If it should be presumed that William Sheperd was then dead and that he left an infant child just born against whom for twenty-one years the Statute of Limitations would not run, and if there should then be added to that twenty-one years the ten years granted to an incompetent person to bring an action, even then the title would be free enough from doubt to warrant the court in saying that the title was marketable. But if it could be assumed that William Sheperd having lived nineteen years should then have died leaving his heirs at law incompetent to sue, even then there can be no doubt that the New York Hospital would be in a situation to meet a claim made by such a person, giving to that person's rights the further extension that the law permits. In such a case where valuable property has been held under claim of title for many years and where it is almost necessary to be presumed that if there were any outstanding claims they would have been asserted, the court is justified in coming to the conclusion, where it appears that for sixty years there has been a claim of title by adverse possession by one against whom there has been no suggestion of a conflicting claim, that that person has acquired a good and marketable title. Such was the rule laid down in the case of *Faile* v. *Crawford* (30 App. Div. 536), and within the rule laid down in that case and in the case of *Cambrelleng* v. *Purton* (125 N. Y. 610) and in *Matter of Trustees of N. Y. P. E. Pub. School* (31 id. 574), the judgment in this case is sustained not only by the facts but by the law, and I think it should be affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.