(74 App. Div. 517.)

## FORSYTH v. LESLIE.

(Supreme Court, Appellate Division, Fourth Department.　July 8, 1902.)

1. SPECIFIC PERFORMANCE—CONTRACT TO EXCHANGE REALTY—DESCRIPTION—
SUFFICIENCY.
　　Plaintiff agreed in writing with defendant to exchange "370 feet of
land on the north side of Riley street, 300 feet east of Humboldt park-
way," for "two double houses on Carmine place, and known as 15 and
25 Carmine place."　Defendant's agent examined plaintiff's property,
was furnished a diagram of the premises, and was repeatedly informed
what the depth of the land was.　After receiving this information, he
said: "It's all right; you can go on and draw up your contract."　*Held,*
that the descriptions were sufficiently definite to warrant specific per-
formance, though the depth of plaintiff's land was not stated in the con-
tract.

2. SAME—SUFFICIENCY OF TITLE.
　　A mortgage 75 years old, and another 80 years old, in the absence of
evidence to defeat the presumption that they had been paid, were not
valid objections to plaintiff's title, in an action to compel specific per-
formance of a contract to exchange.

3. SAME—ADVERSE POSSESSION.
　　Specific performance of a contract to convey realty will not be denied,
even though there is no record or proof of a conveyance to a third party,
through whom plaintiff claimed, where it appears that such party's sub-
sequent grantees have been in quiet and undisturbed possession for 80
years.

4. SAME—PRESUMPTION OF DEATH AND INTESTACY OF PRIOR OWNER.
　　A. was the owner of a certain real estate in 1817.　In 1832 her hus-
band and heirs conveyed to one through whom plaintiff claimed title.
*Held,* that the fact that it did not appear that A. was dead and intestate
did not make plaintiff's title unmarketable, as she must be presumed
dead, and to have died intestate, a certified search having made no
mention of a will.

5. SAME.
　　The fact that the wife of one of the parties through whom plaintiff
claimed title did not join with him in his deed was not an objection to
plaintiff's title, where it was shown that she was dead at the time.

6. SAME—ESTOPPEL.
　　Plaintiff and defendant agreed in writing to exchange lands.　De-
fendant had ample opportunity to know of alleged defects in plain-
tiff's title, but made no objection thereto.　Defendant's agent claimed
that she was unable to exchange at the time set, because she had been
unable to perfect her title.　He made the same statement repeatedly
when plaintiff offered to close up the deal.　*Held,* that defendant could
not refuse to perform on account of defects in plaintiff's title.

Appeal from trial term, Erie county.

Specific performance by Edgar A. Forsyth against Josephine Les-
lie.　From a judgment for defendant, plaintiff appeals.　Reversed.

This action was brought to compel the specific performance of a written
contract for the exchange of certain lands, entered into between the parties
on the 20th day of December, 1899, which contract was in two parts, and
is as follows, viz.:

"Agreement and Offer to Exchange.

"For a good and valuable consideration to me in hand paid by Josephine
Leslie, the receipt of which is hereby acknowledged, I, Edgar A. Forsyth,
of Buffalo, N. Y., party of the first part, do hereby make Josephine Leslie,
of Buffalo, N. Y., through B. H. Downer, real estate agent; that is to say,
I will exchange the following property, at a valuation of $11,500, and de-

scribed as follows, viz.: 370 feet on the north side of Riley street, 300 feet east of Humboldt parkway; subject, however, to liens or incumbrances of sixty-eight hundred dollars, as follows: Subject to a mortgage of $3,300, given to Homestead Loan Association on 220 feet on eastern portion; and second mortgage, $660, on same portion; and $2,840 on 150 feet on western portion, first mortgage,—making a total of $6,800; said mortgages at 6% per annum. For the following property, at a valuation of $8,000, and described as follows, viz.: Two double houses on Carmine place, and known as 15 and 25 Carmine place, in the city of Buffalo, N. Y.; subject, however, to liens or incumbrances of $1,500 on house and lot No. 25, and $1,800 on house and lot No. 15, both mortgages being bank mortgages at 5% interest. And as a further consideration the said party of the first part agrees that the second mortgage on the 220 feet and the first mortgage on the 150 feet shall be given by such party as the party of the second part shall appoint, to take title to said land, and there shall be a release clause releasing any one lot at $20 per foot the first day of any month; any or all lots from both mortgages. Each of us to furnish the other tax and title searches of our properties, and the usual warranty deed of the same, free. Rents, interest, insurance, water rates, and all other matters affecting the above properties, not herein otherwise provided for, to be adjusted between us as of December 31, 1899. Each of said parties hereto hereby agrees to deliver to the other his above-described property free and clear of all liens and incumbrances whatsoever, except as stated above, and all papers are to be exchanged and title passed on or before January 31, 1900.

"As witness my hand and seal this 14th day of December, 1899.

"Edgar A. Forsyth, Sr.

"Witness: B. H. Downer.

"For a good and valuable consideration to me in hand paid by Edgar A. Forsyth, above named, the receipt of which is hereby acknowledged, I, Josephine Leslie, by D. Y. Leslie, agent, do hereby accept the offer as above stated, and do hereby agree to carry out the terms and conditions above mentioned.

"As witness my hand and seal this 20th day of December, 1899.

"Josephine Leslie,
"By D. Y. Leslie, Atty. in Fact."

The complaint set forth the contract in hæc verba, and described the lands embraced therein by metes and bounds. It also alleged an offer and willingness to perform on the part of the plaintiff, the defendant's refusal, and demanded the relief appropriate to such cases. The defendant's answer admitted the execution of the contract, and while denying a proper tender and offer to perform by the plaintiff, as well as certain other allegations of the complaint, alleged, in substance, as reasons for nonperformance: (1) That the descriptions in the contract of the premises of both the plaintiff and defendant were too vague, uncertain, and indefinite and insufficient to locate the same, and that a conveyance by such descriptions would be void for uncertainty; (2) that the plaintiff's title was not free and clear, but that the same was affected by liens and incumbrances thereon; and (3) inability on the part of the plaintiff to perform. The issues thus formed were brought to trial at an equity term of the supreme court held in the county of Erie on the 19th day of June, 1901, at which time the plaintiff's complaint was dismissed, and from the judgment entered thereon this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

I. W. Cole, for appellant.
H. C. Wadsworth, for respondent.

ADAMS, P. J. Upon certain facts found by the learned trial justice the conclusions were reached that the descriptions of the

premises embraced in the contract were so vague and uncertain as
to render a conveyance thereof void and of no effect; that at the
time specified in the contract for its performance, viz., January 31,
1900, the plaintiff did not have a good, marketable title to the prem-
ises which, by the terms of the contract, he had agreed to convey;
that he failed to furnish to the defendant the requisite tax and title
searches of such property; and that he did not and could not make
to the defendant a valid and sufficient tender of a deed of his premises
in accordance with the terms and requirements of the contract. Up-
on having reached these conclusions the court dismissed the plain-
tiff's complaint, and directed judgment in favor of the defendant for
the sum of $135 expenses incurred by her, together with costs, and
an additional allowance of $100.

We think the facts of this case, which, in the main, are undis-
puted, will not uphold these several conclusions, and that the judg-
ment appealed from should consequently be reversed. While it is
doubtless true that the enforcement of the specific performance of
a contract may be said to rest largely in the discretion of a court
of equity, yet it is equally true that such discretion must be exer-
cised, not arbitrarily, but with due regard to established rules of
equity, as well as to the circumstances of each particular case; and
if, notwithstanding all the objections raised by the defendant, it has
been made to appear that the plaintiff had the legal title to the
premises in question, and has substantially fulfilled all the conditions
which the contract imposed upon him, or if it can be said that the
defendant has waived the strict fulfillment of such conditions, a per-
formance by her should be decreed. Haberman v. Baker, 128 N.
Y. 253, 28 N. E. 370, 13 L. R. A. 611.

With this rule in mind, the facts of the case can be considered in
such manner as to enable us to more clearly appreciate to what extent,
if any, they fail to sustain the conclusions reached by the learned trial
court; and to that end let us first consider them so far as they bear
upon the alleged ambiguity of the description of the various parcels
of land referred to in the contract. It will be observed that in his
written offer of exchange the plaintiff refers to his own premises as
"370 feet of land on the north side of Riley street, 300 feet east of
Humboldt parkway," and to those belonging to the defendant as "two
double houses on Carmine place, and known as 15 and 25 Carmine
place, in the city of Buffalo, N. Y." This description certainly admits
of no doubt as to the city and street where the premises are located,
and it would seem to indicate with tolerable certainty that so far, at
least, as the defendant's premises are concerned, it covered all the
land embraced in lots numbers 15 and 25 on Carmine place, the exact
metes and bounds of which were easily ascertainable. The precise
location of the plaintiff's land is also made equally clear, for it is de-
scribed as being 370 feet of land on the north side of Riley street, and
300 feet east of Humboldt parkway. This much is virtually conceded,
but it is said that the description is defective and uncertain in that it
does not state the depth of the lot, or any other data sufficient to en-
able it to be described by metes and bounds. But this omission, if it
was in any wise misleading, as to which we entertain serious doubt,

inasmuch as no such objection was ever suggested by the defendant until she served her answer in the action, is one which could have been and was remedied by proof of extrinsic facts. Waring v. Ayres, 40 N. Y. 357.

It appears, without contradiction, that before executing the contract the defendant's husband, who acted as her agent in the matter, made a personal inspection of the premises in question, and was thereby afforded ample opportunity to ascertain, not only their exact location, but also their boundary lines. Moreover, he was furnished by Mr. Downer, the agent of both parties, with a diagram of the same which showed their frontage, depth, and location in feet and inches. He was also repeatedly informed by Downer that the lands were 101½ feet deep, and after receiving this information said to him: "It's all right; you can go on and draw up your contract." These facts, together with others of like character, none of which are disputed, seem to identify the plaintiff's premises beyond any question; and as was said in Waring v. Ayres, supra, they were admissible "in order to apply, not to alter or vary, a written agreement." We fail to see, therefore, with these facts in the case, how it can be successfully contended that there was sufficient ambiguity in the descriptive clauses of the contract to justify the defendant in refusing to perform upon that ground.

The objection that the plaintiff was unable to furnish a marketable title to his premises, while resting upon a foundation of more apparent stability, will, we believe, be found, upon careful examination, to be equally untenable. By reference to the written contract, it will be seen that the defendant was to take the plaintiff's land subject to a mortgage of $3,300 upon 220 feet of the easterly portion thereof, which mortgage was to run to the Homestead Loan Association, and subject also to a second mortgage upon the same portion of $660, and to another mortgage of $2,840 upon the remaining 150 feet of the westerly portion of the premises. With the exception of these three mortgages, the plaintiff was to deliver a title, free and clear of all incumbrances whatsoever, on or before January 31, 1900, the same to be authenticated by a tax and title search. Pursuant to this agreement the plaintiff caused a search to be made of his title, and this search was delivered to the defendant's agent some time the latter part of December, 1899, who immediately placed the same in the hands of his attorney. It appeared by this search that the mortgage of $3,300 had been given to the Homestead Savings & Loan Association on the 16th day of December, 1899. It further appeared that there were two other mortgages in existence which were apparent liens upon the plaintiff's premises, one of which was for $3,500, and the other for $1,400. As a matter of fact, however, at the time the search was delivered both of these mortgages had been paid in full, and discharges thereof had been executed and were in the possession of the plaintiff, who, through inadvertence, had failed to have them recorded. No objection, however, was raised by the defendant to the title by reason of these mortgages until issue was joined in the action. Had there been, it was within the plaintiff's power to obviate the same by placing the discharges upon record, as he in fact did some time prior to the rendition of the judgment herein.

The search also showed that another mortgage of $449, which covered a portion of the plaintiff's premises, had never been discharged of record. This mortgage was executed by one Samuel Wilkinson on the 1st day of December, 1819. It was consequently more than 80 years old, and as there is no evidence whatever as to its terms, nor any proof of payment of either principal or interest thereon during the past 50 years, the presumption arises that the lien thereof had been extinguished, and consequently it does not constitute a valid objection to the plaintiff's title. Belmont v. O'Brien, 12 N. Y. 394; Katz v. Kaiser, 10 App. Div. 137, 41 N. Y. Supp. 776; Knapp v. Crane, 14 App. Div. 120, 43 N. Y. Supp. 513.

For the same reason it cannot be said that the mortgage of $1,325 given by one Jeremiah M. Landon to Anson Adams, on the 11th day of February, 1833, was available to the respondent as a defense to the action. This mortgage was 75 years old, and the defendant furnishes no evidence whatever to repel the presumption that it had been paid.

It was found by the learned trial court that there was no record or proof of any conveyance of the west part of the plaintiff's premises from Ebenezer Johnson to Caleb Rogers, the grantor thereof by deed to Samuel Wilkinson in November, 1818. The search, however, disclosed the fact that there was in existence an unrecorded deed from Johnson to Rogers, and by consent of counsel in open court this deed was regarded as in evidence upon the trial. Moreover, it was made to appear beyond all question that the subsequent grantees who held the title under Caleb Rogers have been in quiet and undisturbed possession of the premises for upwards of 80 years, during which time their title has never been questioned. This proof was sufficient, in our opinion, to exclude to a moral certainty any right or claim on the part of the heirs of Ebenezer Johnson, he being one of the mesne owners from whom the plaintiff's title was derived. Hamershlag v. Duryea, 58 App. Div. 288, 68 N. Y. Supp. 1061; Binzen v. Epstein, 58 App. Div. 304, 69 N. Y. Supp. 789; Kahn v. Mount, 46 App. Div. 84, 61 N. Y. Supp. 358; Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387.

It further appears by the search that in 1817 one Phœbe Adams was the owner of a portion of the premises in question, she having obtained title thereto by warranty deed from Ebenezer Johnson and wife. Subsequently, and in 1832, certain parties, claiming to be the husband and heirs at law of Phœbe Adams, assumed to convey the premises owned by her to Jeremiah M. Landon, who had previously acquired the title to so much thereof as was not owned by Mrs. Adams, and it was held by the court below that there was a further defect of title by reason of the fact that it did not appear that Phœbe Adams was dead, or, if dead, that she left no will, or that the parties assuming to convey as her husband and heirs at law were in fact what they represented themselves to be, and of full age. The fact that Phœbe Adams took title more than 85 years ago, at which time she was in all probability at least 21 years of age, creates a pretty strong presumption that she has long since departed this life, and, as the certified search makes no mention of any will, the further presumption may fairly be indulged that she died intestate. All question as to the sufficiency of the title which purports to come

from her husband and heirs is set at rest by the affidavits of Susan W. Landon, the daughter of Jeremiah M. Landon, one of the plaintiff's predecessors in title, and by the fact that Landon's title, which was obtained at least 70 years ago, has never been questioned.

It was further found that the plaintiff's title was defective in that it was not made to appear that Joseph Adams had no wife at the time he joined in the conveyance to Landon, and for the further reason that no wife joined in the deed from George L. Ritt, whose conveyance to Alois Schaefer on December 12, 1885, constitutes a part and parcel of the plaintiff's chain of title. The obvious answer to the first of these findings is that Joseph Adams was the husband of Phœbe Adams, and, as has already been shown, at the time he conveyed to Landon his wife was dead, and could not have joined in such conveyance; and, so far as George L. Ritt is concerned, his deed recited that he was unmarried, and there is not the slightest evidence in the case to suggest that this recital was not true.

We have thus considered seriatim the several objections upon which the defendant rests her right to defeat the plaintiff's action, upon the ground that his title was imperfect, and in doing so have reached the conclusion that the facts to which we have adverted furnish a complete and perfect answer to each and all of them, and show quite conclusively that they do not create such a doubt concerning the validity of the plaintiff's title as would affect its value and interfere with its sale to a reasonable purchaser (Goodwin v. Crooks, 58 App. Div. 464, 69 N. Y. Supp. 578); but there is still another circumstance, even more potent in its effect upon the defendant's rights, to which we have alluded somewhat casually thus far, but one which it now becomes important to consider.

It is an undisputed fact that the search furnished by the plaintiff disclosed all the defects in his title of which the defendant now complains, and that the defendant had this search in her possession or in the hands of her attorney from the latter part of December, 1899, until long after the time fixed by the contract for its fulfillment. She consequently had ample opportunity to know as much about the plaintiff's title as she knows now, and yet she never indicated in any way that such title was not satisfactory until after this action was brought. On the contrary, it appears that the plaintiff having executed a deed of the premises, a short time prior to the time for its delivery authorized his son, who is a lawyer, to call the defendant's husband and agent up on the telephone, and inform him that the plaintiff was ready to perform. To this information Mr. Leslie replied that he could not perform for a few days, for the reason that certain incumbrances were resting upon the Carmine place property, which it would take some time to have discharged. A few days thereafter the son saw Leslie again, and told him he had the deed in his pocket, and that his father was ready to perform, and then presented the deed, but Leslie replied, "I am just in the same fix about that title; I can't perform;" and when told that the time fixed for the performance had expired, and that the matter ought to be closed up, Mr. Leslie stated the same thing in substance, saying, "Mr. Forsyth, I am in just the same fix I have been, and it may

be some little time before I can perfect my title." Finally, and on the 10th day of February following, Mr. Leslie, in response to a letter from Charles E. Forsyth, the son, came to the latter's office, and, upon being told that the matter must be closed up, said, in substance, that his title was in the same predicament it had been in, and that he had not been able to close it up, and that this was his only reason for not closing it up. This evidence, which is un-disputed, establishes not only a sufficient tender of a deed by the plaintiff (Hun v. Bourdon, 57 App. Div. 351, 68 N. Y. Supp. 112), but it also shows a refusal upon the part of the defendant to per-form, which refusal was based, not upon any default or omission of the plaintiff, but solely upon the defendant's inability to perfect her title. In these circumstances it will hardly answer for the defend-ant to come into a court of equity and set up other and entirely dif-ferent reasons as a justification for her refusal to perform; for, as we have seen, some of the objections now raised, and probably all of them, could have been obviated had they been made when the plaintiff first notified the defendant of his readiness to fulfill. Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287.

Several objections other than those to which specific reference has been made are now urged as a defense to the action, but they are of minor importance as compared with those already considered, and, as they relate mainly to matters which by the terms of the contract were left for adjustment between the parties until the day of performance, we do not deem it necessary to consider them, in-asmuch as they were doubtless waived by the defendant's refusal to perform. Moreover, we think we have already furnished suffi-cient reason for the conclusion we have reached that the defend-ant's judgment cannot stand.

Judgment reversed, and new trial ordered, with costs to the ap-pellant to abide event. All concur.