# MEMORANDA

*OPINIONS NOT OTHERWISE REPORTED.*

GEORGE M. JANES and Another *v.* JOHN P. H. JANES et al.*

(County Court, Oneida County, March, 1919.)

*Partition — tenants in common — title in defendant by adverse possession held to have been established — complaint dismissed.*

ACTION for partition.

Alliaume & McNamara, for plaintiffs.

J. & W. M. Gallagher, for defendant John P. H. Janes.

R. S. Johnson, for defendants William F. Janes et al.

Clarence E. Williams, guardian *ad litem,* for defendants William T. Janes and another.

HAZARD, J. The parties to this action are the heirs-at-law of Johnathan Janes, and their wives. Johnathan Janes was in his lifetime the owner of a farm consisting originally of some sixty-three or sixty-five acres, and located in the town of Vienna in this county. He died intestate in April, 1880. The plaintiff is a son of John P. H. Janes, and is the grantee of certain heirs of Johnathan who have conveyed their interest to him. His father, John P. H. Janes, the defendant, is living on the farm in question. It

---

* Published by request.—[REPR.

appears that during the lifetime of Johnathan Janes, John P. H., his son, sometime about the year 1870, moved on the farm. He has continued to occupy it ever since. It is claimed in the answer of John P. H. Janes that he went into possession of the farm under an agreement with his father Johnathan, in and by which the father transferred to his son all the real estate mentioned and described in the complaint, in consideration of an agreement by the son and his wife to support and care for said Johnathan during the remainder of his life, and give him a decent burial and erect a marker at his grave. No deed was ever given, at least none has been produced, nor has there been any proof substantiating the above agreement. The son, John P. H., is now an old man, eighty-one years of age, and it is said that owing to the lapse of time and the death of all the witnesses competent to testify, he is now unable to produce any evidence substantiating his claim. He claims to be the owner of the entire farm, to the exclusion of all other parties, basing his claim upon adverse possession. There was no particular controversy about the facts involved, which are substantially as follows:

John P. H. Janes moved upon the farm in question about the year 1870 and lived there with his father and his mother. This is not intended to decide who might have occupied the position of head of the house, but they all lived there together. Sometime about 1872 or 1873 John built a new house costing about $1,500, a barn costing about $900, and a hog and corn house costing about $150. The father, Johnathan, died in April, 1880. The son John has been in exclusive possession of the farm ever since. The farm appears to be ordinary agricultural land, and it appears that John has cultivated " the biggest part of it for hay and corn and things;" that he kept a dairy thereon, and used and occupied the whole farm. He has kept

the buildings in repair, fenced the farm and kept it fenced. He has kept the buildings insured in his own name, and paid the taxes. It appears by the evidence of the witness McCormack, a former assessor in that town, that at least since 1885 the property has been assessed to John. Some twenty-six or twenty-seven years ago John sold off some 12,000 or 14,000 feet of timber growing on a tract of about twenty acres, and part of the farm in question, to the witness Annis, who paid him therefor and the timber was removed. Sometime in February, 1906, a strip of land being a part of the farm in question was sold by John and wife to the New York, Ontario and Western Railroad Company, and John received the money for it. He has never paid any rent to anyone, and it seems to be a fair and comprehensive statement of the fact that since the death of his father in 1880, a period of nearly forty years, John has occupied the farm in all things exactly as if he was the sole and exclusive owner of it. The defendants who are making the principal contention against his title allege in their answer that since June 28, 1884, " the defendant John P. H. Janes has fully occupied, resided upon and had full and exclusive use of the said premises and of the rents and profits thereof; and has never in any way accounted to these defendants or anyone else therefor." They ask for a partition and an accounting for these rents and profits, but I think in making the admission quoted above, they have practically pleaded themselves out of court. It may be conceded that John P. H. Janes has no paper or record title to the premises, and that in certain views of the case he is, or at least at one time was, or might have been a co-tenant, at least in title, with the other defendants to this action. The defendants, or some of them, claim, however, that there was " no open, hostile possession." That " the presumption of law is in favor

of possession in subordination to the title of the true owner." That " occupation must not only be hostile in its inception, but must continue hostile and at all times during the required period of 20 years." That there has been established no notice or declaration of intention to claim title. Many cases are cited in support of these contentions, and we will consider them later in detail.

I am, however, clearly of the opinion that the evidence in the case establishes a title in the defendant John P. H. Janes, by adverse possession. The case which I consider most directly in point as decisive in this matter is *Zapf* v. *Caster,* 70 App. Div. 395. That case is more directly and completely in point than any other, but there are many other cases of interest in this connection. In *Florence* v. *Hopkins,* 46 N. Y. 182, 186, it is said: " * * * possession of one of the tenants in common, may become adverse by acts on his part *amounting to an exclusion of his co-tenants."* The possession of one tenant in common is, in a legal sense, that of all until he assumes a position hostile to the relation of his co-tenant, and to have an exclusive right to the property.

*Sweetland* v. *Buell,* 164 N. Y. 551. Where a son is in possession of the land at the time of the common ancestor's death, and he makes claim to the whole entirely excluding the co-parceners from all participation in the use of it and the rents and profits of it; held, his possession was adverse and his holding hostile. The rule was stated to be: " The exclusive receipts of the profits by one, withholding from his companions all participation in them * * * was sufficient evidence of an adverse holding." *Clapp* v. *Bromagham,* 9 Cow. 530. " Though a tenant in common enter without claiming adversely to his co-tenant, yet his possession may afterwards become adverse by notorious acts and claim of title." *Millard* v. *McMul-*

*lin,* 68 N. Y. 352. " To effect an ouster of the co-tenant there must be ' an actual, continued, visible, notorious, distinct and hostile possession.' It must be such that knowledge of its existence is brought home to the co-tenant." *Culver* v. *Rhodes,* 87 N. Y. 353. Notwithstanding the rather numerous qualifying adverbs above, it seems entirely clear to me that the defendant John P. H. Janes comes within all of them. " There must be notice in fact to the co-tenant that the adverse claim is made, or there must be such open and public acts by the adverse claimant as will make his possession so visible, hostile, exclusive and notorious that notice on the part of the co-tenant of the claim adverse to his right may fairly be presumed." *Hamershlag* v. *Duryea,* 38 App. Div. 133. See same case, second appeal, 58 App. Div. 288. The case was to compel the acceptance of a title and the point involved was its marketability. It was held in the second appeal above referred to that adverse possession for sixty years was sufficient to establish a marketable title. The judgment was affirmed without opinion in 172 New York, 622.

We will consider the case cited by the contesting defendants: *Archbold* v. *N. Y. C. & H. R. R. R. Co.,* 157 N. Y. 574, is clearly to be differentiated. The court said: " The parcel of land in controversy was of such character and so situated that it was scarcely susceptible of actual occupation and cultivation." *Greenleaf* v. *B. F. & C. I. F. R. Co.,* 141 N. Y. 395, is in much the same category as witness the following: " Mere payment of taxes, claim of title, assertion of ownership made even upon the land, mere words however emphatic, do not show the actual possession which raises the presumption of title sufficient to maintain ejectment." Neither of these cases can apply to a case where an actual and complete possession obtained for nearly forty years. The case of

*Monohan* v. *N. Y. C. & H. R. R. R. Co.*, 31 Misc. Rep. 619, was one where defendant had laid a track in a public street in which it seems the abutting owner's title extended to the center. The tracks were laid pursuant to a license given by the city of Syracuse, and it was held that defendant by going into possession under that license, was presumably occupying thereunder, and " not in hostility to the rights of anyone." A somewhat similar situation obtains in the case of *Doherty* v. *Matsell*, 119 N. Y. 646. There a party entered and held under a tax title going for twenty-one years, and it was held there being no evidence that he had held under any claim except that of tax sale, such holding was not adverse to the claimants under the original title. To about the same effect is *Hoyt* v. *Dillon*, 19 Barb. 644. *Rathbonville Cemetery Association* v. *Betson*, 208 N. Y. 364, is disposed of, so far as the case at bar is concerned, by quoting from the opinion the following: " The evidence in this case * * * establishes that whatever was done by the plaintiff was by the assent of the lot owners who contributed the money necessary for the work." The possession was held, therefore, " not hostile." There is nothing about that case which is of assistance in this. Copious quotations are made in the contesting defendants' brief. From the case of *Green* v. *Horn*, 165 App. Div. 743, there was an action in ejectment, and it appears that it had been tried five times, and five times appealed to the Appellate Division. The decision of the majority of the court was evidently prompted by a determination to quiet the litigation. All of the language quoted is from a concurring opinion by Judge Woodard who seems to think that the doubts expressed by a majority of his court were not warranted. He cites a number of axioms applicable in a general way to adverse possession, but which I think have all been disposed of hereinbefore as not

applicable to the case at bar. Witness Judge Woodard's concluding sentence: "For all that appears, the defendant may have been a tenant by the year or at will, and so the construction of the fence would not be adverse, but in subordination of the plaintiff's title." No such inferences or conclusions are possible in the case at bar. Great stock is set upon the case of *Lewis* v. *N. Y. & Harlem R. R. Co.,* 162 N. Y. 202, and there are many quotations from the opinion of Judge Vann therein. It seems that Judge Vann said: "Occupation must not only be hostile in its *inception,* but it must continue hostile, and at all times, during the required period of twenty years * * *. The entry must be strictly adverse to the title of the rightful owner, for if the first possession is by permission it is presumed to so continue until the contrary appears. If the occupation begins with recognition of the real owner's estate it is presumed to be subservient, * * *." Furthermore (p. 221): "The occupation was permissive from the outset, and, as there is no adequate evidence to the contrary, *is presumed to have so continued ever since."* Now it is claimed that inasmuch as John P. H. Janes did not enter adversely, but went into possession presumably by consent of his father Johnathan, that there was no "hostile inception," and the presumption is that he continues to hold subject and subservient to the title of his father Johnathan. No further statement is necessary to show that the principle is not applicable here. It would be preposterous to argue that John P. H. has been holding pursuant or subserviently to his father's title *when the father died in 1880.* Of course if Johnathan Janes were still alive, the case last quoted would be an authority. The fact of a change in the ownership, after entry, changes the rule so there would be no presumption that John was holding under his father's title after his father was dead. This was

made clear in *Howard* v. *Howard,* 17 Barb. 663, 666, where the court said: " Some of the authorities hold that a possession, to be adverse, must be hostile in its commencement. The proposition is subject, nevertheless, to some qualification. ' The principle, however, that possession must in its inception be adverse, and continue so, is not well understood. In those cases in which the observation occurs *nothing has happened to change the character of the first possession,* * * * , , "

It seems to me that the defendant John P. H. Janes having occupied this farm in all things as if he were the sole and only owner and proprietor, and having been so recognized by everyone and no objections having been raised for nearly forty years by those who might have made claim at one time to an interest in the farm, is entitled to have his title considered as established by adverse possession. The case furnishes an excellent illustration of the desirability of quieting titles by adverse possession. These claimants have held off until all of the witnesses who might have established the arrangement between John P. H. and his father Johnathan, are dead, and John is an old man upwards of eighty years of age. I think the evidence clearly establishes that he is entitled to be regarded as the owner of the entire property. The deed to the railroad which occurred in 1906 is not in itself and standing alone sufficient to establish his title or to be binding upon the other defendants as a notice of his adverse possession, because it happened less than twenty years ago. It is, however, one of the circumstances of the case. It is difficult to conceive in what way or manner the owner of a fee simple absolute could have had more complete or exclusive possession of this farm than has the defendant John P. H. Janes, since the death of his father in 1880.

The complaint must be dismissed. I will hear the parties interested upon the subject of the form of the judgment and matter of costs, at Motion Term, March 29, 1919, at ten o'clock A. M.

Complaint dismissed.